# Illinois Department of Insurance

| **JB PRITZKER** | **ANN GILLESPIE** |
|---|---|
| Governor | Acting Director |

May 6, 2025

Philadelphia Indemnity Insurance Company
Three Bala Plaza East- Suite 400
Bala Cynwyd, PA 19004-1403

Case Number: 2025 L 5798

To whom it may concern:

    Enclosed please find a copy of summons and complaint mailed to me as your agent for service of process and received in my Springfield Office on May 6, 2025 in the case of Kinsey & Kinsey, Inc v. your company et al..

Sincerely,

*Ann Gillespie*

Ann Gillespie
Acting Director of Insurance

AG: AN: KS
Encl.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**Springfield Office**
320 W. Washington Street
Springfield, Illinois 62767
(217) 782-4515

**Chicago Office**
115 S. LaSalle Street, 13th Floor
Chicago, Illinois 60603
(312) 814-2420

EXHIBIT B

5/15/2025 1:48:23 PM Batch.16606 1061

av v. Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person.
llother Law Division Initial Case Management Dates will be heard via Zoom
or more information and Zoom Meeting IDs go to https//www.cookcountycourt.org/HOME? Zoom-Links? Agg4906_Select Tab/12
ourt Date: 1/2 22 9:00 AM

# SUMMONS

## IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**
Check if this is not the 1st Summons issued for this Defendant/Respondent.

**COUNTY:** Cook
*County Where You Are Filing the Case*

Enter the case information as it appears on your other court documents.

**PLAINTIFF/PETITIONER OR IN RE:** Kinsey & Kinsey, Inc.
*Who started the case.*                     *First, Middle, and Last Name or Business Name*

**DEFENDANTS/RESPONDENTS:** Philadelphia Indemnity Insurance Co.
*Who the case was filed against.*

*First, Middle, and Last Name or Business Name*

FILED
5/1/2025 3:50 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L005798
Calendar, W
32531804

**2025L005798**

**Case Number**

## The Defendant/Respondent named above has been sued. Read this form for information about how to respond to this lawsuit. Also see page 4 for next steps.

**For the person filling out this form: Read all instructions in this box.**

This *Summons* can only be used for certain types of cases. See the *How To Serve a Summons* Instructions for more information: ilcourts.info/summons-instructions.

Check 1 if this is a 30-day summons, or check 2 if this is a date certain summons. Fill in all the information in 1 or 2.

- Use a **date certain summons** if you are asking for money of $50,000 or less or recovery of your personal property that you think the Defendant has, and for some mandatory arbitration cases. In 2, fill in your court date and how to go to court. You may get the court date when you e-file or you may need to ask the Circuit Clerk's office.

- Use a **30-day summons** for most other case types.

Complete the rest of the form with the Defendant/Respondent's information and information about the lawsuit.

**If you are suing more than 1 Defendant/Respondent,** attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

### ☑ 1. 30-DAY SUMMONS

To participate in this case, you must file your *Appearance* and *Answer/Response* forms with the court within 30 days after you are served with this *Summons* (not counting the day of service) by e-filing or at:

Court Address: Richard J. Daley Center, 50 W Washington St, Chicago, IL 60602
*Courthouse Street Address*

**- or -**

### ☐ 2. DATE CERTAIN SUMMONS

Your court date is listed below. Information about getting a court date and how to attend is available from the Circuit Clerk. You can find their contact information at ilcourts.info/CircuitClerks.

To respond to this *Summons,* you must **attend** court in one of the ways checked below on:

_____ at _____ ☐ a.m. ☐ p.m. in _____.
*Month, Day, Year*              *Time*                                    *Courtroom Number*

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts. Forms are free at ilcourts.info/forms.

SU-S 1503.7                     Page 1 of 6                     (11/24)

Case Number: _____

## Going to Court for a Date Certain Summons

Court dates may be in-person, remote, or a combination of in-person and remote.

☐ **In person** at: _____
 Courtroom Address                                    Courtroom Number

☐ **Remotely** (video or telephone)

 **By video conference** at: _____
  Video Conference Website

 Log-in information: _____
  Video Conference Log-in Information, Meeting ID, Password, etc.

 **By telephone** at: _____
  Call-in Number for Telephone Remote Appearance

To find out more about remote court options:

 Phone: _____ or Website: _____
  Circuit Clerk's Phone Number                         Website URL

## 3. ADDITIONAL INFORMATION ABOUT THE LAWSUIT

a. I am asking for the following amount of money in my *Complaint/Petition*:$ **OVER $50,000** .

 *(Enter 0 if you are not asking for money)*

b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession) in my *Complaint/Petition.*

 ☐Yes ☑No

## 4. DEFENDANT/RESPONDENT'S INFORMATION

a. Number of Defendants/Respondents being served:

 ☑ I am having 1 Defendant/Respondent served and their information is on this form below.

 ☐ I am having more than 1 Defendant/Respondent served. The first is listed below. I have attached *Additional Defendant/Respondent Address and Service Information* forms for the following number of additional Defendants/Respondents: _____ .
  Number

b. First Defendant/Respondent's **primary address/information** for service:

 Name: Philadelphia Indemnity Insurance Company _____
  First, Middle, and Last Name, or Business Name

 Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

 Illinois Director of Insurance, pursuant to 215 ILCS 5/112 _____
  First, Middle, and Last Name

 Street Address: Illinois Dept. of Insurance, 320 W. Washington Street ____
  Street, Apt #

 City, State, ZIP: Springfield, Illinois 62767 _____
  City                                        State                Zip

 Telephone: (217) 782-4515 _____ Email: _____

Case Number: _____

c. **Second address** for this Defendant/Respondent:

☑ I do **not** have another address where the Defendant/Respondent might be found.

☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address: _____
          *Street, Apt #*

City, State, ZIP: _____
          *City*            *State*      *Zip*

Telephone: _____ Email: _____

d. Person who will serve your documents on this Defendant/Respondent: Director of IL Dept. of Insurance

☐ ~~Sheriff in Illinois~~ ☐ ~~Special process server~~ ☐ ~~Licensed private detective~~ pursuant to 215 ILCS 5/112

☐ ~~Sheriff outside Illinois:~~ _____
                       *County & State*

## PLAINTIFF/PETITIONER INFORMATION:

*Enter your information below.*

Name James T. Nyeste, Attorney for Plaintiff, Kinsey & Kinsey, Inc. _____
          *First, Middle and Last Name*

Registered Agent's name, if any _____
                      *First, Middle and Last Name*

Street Address 258 Maple Hill Rd. _____
            *Street, Apt #*

City, State, ZIP: Glencoe, Illinois 60022 _____
           *City*             *State*      *Zip*

Telephone: (847) 242-0601 _____ Email: j.nyeste@coveragelaw.com _____

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

**STOP** | The Circuit Clerk and officer or process server will fill in this section.

**To be filled in by the Circuit Clerk:**

Witness this Date: _____     *Seal of Court*

Clerk of the Court: 5/1/2025 3:50 PM Mariyana T. Spyropoulos

**To be filled in by an officer or process server:**

Date of Service: _____

*Fill in the date above and give this copy of the Summons to the person served.*

**Note to officer or process server:**

- If **1** is checked, this is a 30-day *Summons* and must be served within 30 days of the witness date.
- If **2** is checked, this is a date certain *Summons* and must be served at least 21 days before the court date, unless 3b is checked yes.
  - If **2** is checked **and** 3b is checked yes, the *Summons* must be served at least 3 days before the court date.
- Fill in the date above and give this copy of the *Summons* to the person served.
- You must also complete the attached *Proof of Service* form and file it with the court or return it to the Plaintiff.

SU-S 1503.7                Page 3 of 6                (11/24)

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 5 of 65 PageID #:11



Case Number: _____

# NEXT STEPS FOR PERSON FILLING OUT THIS FORM:

When you file a lawsuit, you must notify the person or business you are suing of the court case by having the *Summons* and Complaint or Petition delivered to them. This is called "serving" them.

File your *Summons* and Complaint or Petition with the Circuit Clerk in the county where your court case should be filed. The Circuit Clerk will "issue" the *Summons* by putting a court seal on the form.

Have the sheriff or a private process server serve the *Summons* and a copy of the Complaint or Petition on the Defendant/Respondent. You cannot serve the *Summons* yourself.



Learn more about each step in the process and how to file in the instructions: ilcourts.info/summons-instructions.

# NEXT STEPS FOR PERSON RECEIVING THIS DOCUMENT:

**You have been sued:**
- Read all documents attached to this *Summons*.
- All documents referred to in this *Summons* can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees (Civil)*.
- When you go to court, it is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

**If Section 1 on page 1 of this *Summons* is checked (30-day summons):**
- You must file official documents called an *Appearance* and an *Answer/Response* with the court within 30 days of the date you were served with this *Summons*.
- If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- You should be notified of any future court dates.

**If Section 2 on page 1 of on this *Summons* is checked (date certain summons):**
- You must attend court on the date listed in Section 2 of this *Summons*.
- If you do not attend that court date, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

**Need Help? ¿Necesita ayuda?**
- Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents.
- Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.
- You can also get free legal information and legal referrals at illinoislegalaid.org.
- If there are any words or terms that you do not understand, please visit Illinois Legal Aid Online at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

Case Number: _____



# PROOF OF SERVICE OF SUMMONS
# AND COMPLAINT/PETITION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**

Check if this is not the 1st Summons issued for this Defendant/Respondent.

FILED
5/1/2025 3:50 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L005798
Calendar, W

**COUNTY:** Cook _____

County Where You Are Filing the Case

Enter the case information as it appears on your other court documents.

**PLAINTIFF/PETITIONER OR IN RE:** Kinsey & Kinsey, Inc. _____

Who started the case.    First, Middle, and Last Name or Business Name

**2025L005798**

**Case Number**

**DEFENDANTS/RESPONDENTS:** Philadelphia Indemnity Insurance Co. ____
Who the case was filed against.

_____

_____

First, Middle, and Last Name or Business Name

🛑 **STOP**  Do not complete the rest of the form. The sheriff or special process server will fill in the form.
Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent who will be served.

My name is _____ and I state:

Officer/Process Server First, Middle, Last Name

## SERVICE INFORMATION

Defendant/Respondent: _____

First, Middle, Last Name, or Business Name

☐ I was not able to serve the *Summons* and Complaint/Petition on the Defendant/Respondent named above.

- or -

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent named above as follows:

☐ **Personally** on the Defendant/Respondent:

☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

☐ On someone else **at the** Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:

Name of person served: _____

First, Middle, Last Name

☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____ Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

and by sending a copy to this Defendant/Respondent in a postage-paid, sealed envelope to the above

address on this date: _____.

SU-S 1503.7                            Page 5 of 6                            (11/24)

Case Number: _____

☐ On the **Business's agent:** _____

*First, Middle, Last Name*

☐ Male ☐ Female ☐ Non-Binary  Approx. Age: _____  Race: _____

On this date: _____  at this time: _____  ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

## SERVICE ATTEMPTS

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

**First Attempt:** On this date: _____  at this time: _____  ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____
Other information about service attempt:

_____

_____

_____

**Second Attempt:** On this date: _____  at this time: _____  ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____
Other information about service attempt:

_____

_____

_____

**Third Attempt:** On this date: _____  at this time: _____  ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____
Other information about service attempt:

_____

_____

_____

## SIGN

I certify under 735 ILCS 5/1-109 that:

1) everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and

2) I understand that making a false statement on this form is perjury and has penalties provided by law.

Your Signature /s/ _____  Print Your Name _____

You are: ☐ Sheriff in Illinois                   ☐ Special process server
☐ Sheriff outside Illinois: _____   ☐ Licensed private detective, license number: _____

*County and State*                                                                    *License number*

**FEES:**

Service and Return: $_____  Miles: $_____  Total: $_____

av v Divis io n Mo tio n Se ct ion Initial Case Manageme n t L )at:es for C :AL_EINE )ARS (A,B,C,D will be Heard )n Person.
Il other Law Division Initial Case Management Dates will be heard via Zoom
or more information and Zoom Meeting IDs go to https.//www.cookcountycourt,org/HOME?Zoom-Links?Agg4906_Select Tab/12
ourt Date: 7/2/2025 9:00 AM

FILED
5/1/2025 3:50 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L005798
Calendar, W
32531804

**In the Circuit Court of Cook County, Illinois**
**County Department, Law Division**

Kinsey & Kinsey, Inc., )
       Plaintiff., )
v. ) 2025L005798
   )
Philadelphia Indemnity Insurance Co., )
       Defendant. )

## Complaint for Breach of Contract

Plaintiff. Kinsey & Kinsey, Inc., by its undersigned counsel. alleges the following

Complaint against Philadelphia Indemnity Insurance Company.

### Nature of the Action

1. This is a complaint for breach of a liability insurance policy. Kinsey & Kinsey seeks

contract damages, including but not limited to reimbursement for what it has had to pay in

settlement of a claim by a third party that should have been paid by the insurance company.

### Allegations Common to all Counts

2. Plaintiff Kinsey & Kinsey, Inc. is a small. family-owned Illinois corporation, which

performs consulting work in the areas of financials, procurement, human resources, payroll,

budgeting, planning, manufacturing, and related areas.

3. Defendant Philadelphia Indemnity Insurance Company (PIIC) is an insurance company

licensed to write property and casualty insurance in the State of Illinois and is present and doing

business in this State with an office in Chicago.

4. Kinsey & Kinsey was insured by PIIC under Policy No. PHSD1161594 providing claims-

made professional liability insurance with a policy period of August 20, 2016 to August 20, 2017

(the Policy) and with a per-claim limit of liability of $1 million and annual aggregate limit of

liability of $2 million. A true and correct copy of the Policy is attached hereto as Exhibit A.

-1-

5. Bellin Memorial Hospital, Inc. (Bellin) is a Wisconsin not-for-profit hospital corporation based in Green Bay, Wisconsin, and operates a hospital and healthcare facility there.

6. Kinsey & Kinsey entered into a software consulting agreement with Bellin for the installation of new a software package starting in 2015. The majority of the project was completed successfully, but there were relatively minor issues with one component of the software. Kinsey & Kinsey offered to work with Bellin to resolve the problem, but Bellin would not cooperate.

7. In 2018 Bellin filed suit in state court in Brown County, Wisconsin, against Kinsey & Kinsey and also against Brad Kinsey, one of the principals of Kinsey & Kinsey, and Brian Thome, an employee of Kinsey & Kinsey. Bellin alleged claims for intentional misrepresentation / fraud (Count I – against all defendants), negligent misrepresentation (Count II – against all defendants), violation of the Wisconsin Deceptive Trade Practices Act (Count III – against all defendants), and breach of contract (Count IV – against Kinsey & Kinsey only).

8. Kinsey & Kinsey, Brad Kinsey, and Brian Thome all qualified as insureds under PIIC's Policy, with Kinsey & Kinsey being the "named entity" and Brad Kinsey and Brian Thome both being "individual insureds" as those terms are defined by the Policy. PIIC accepted the defense of each of Kinsey & Kinsey, Brad Kinsey, and Brian Thome in the Bellin lawsuit. PIIC assigned defense counsel to represent Kinsey & Kinsey and Brad Kinsey, together, and separate defense counsel to represent Brian Thome.

9. PIIC defended Kinsey & Kinsey, Brad Kinsey, and Brian Thome in the Bellin suit without asserting any potential coverage defenses or otherwise reserving any rights to deny coverage under the policy. PIIC considered all counts in the suit to be covered, including the

-2-

breach of contract count, because Kinsey & Kinsey had provided Bellin with professional services and because the insurance policy was for professional services liability.

10. PIIC considered the Bellin suit to present a single "claim" under the Policy against three insureds such that the maximum coverage available was $1 million.

11. The Bellin suit began trial on November 15, 2021. After business hours, late on Friday night, November 19, 2021, counsel for PIIC, Cope Ehlers P.C., sent an email to counsel for Kinsey & Kinsey and Brad Kinsey stating that it anticipated reaching a settlement between Bellin and Brian Thome.

12. Then, late on Sunday night, November 21, 2021, at 11:59 p.m., Cope Ehlers sent a further email to counsel for Kinsey & Kinsey and Brad Kinsey stating that over the weekend PIIC had agreed to a "settlement in principle" on behalf of Thome in exchange for the payment of $1 million. The email stated that PIIC would continue to provide for the defense of Kinsey & Kinsey and Brad Kinsey, through trial, notwithstanding that, in PIIC's view, the full Policy limit would be exhausted by PIIC's payment of the settlement on behalf of Thome.

13. PIIC did not seek the consent of Kinsey & Kinsey to settle on behalf Thome or to pay the full Policy limit (as PIIC contends) on his behalf.

14. The $1 million settlement negotiated by PIIC over the weekend was immediately finalized on Monday, November 22, 2021, and Thome was dismissed from the Bellin suit.

15. Following the Thome settlement, the negligent misrepresentation count against Kinsey & Kinsey and Brad Kinsey was voluntarily dismissed by Bellin. The trial continued against Kinsey & Kinsey and Brad Kinsey on the fraud, Deceptive Trade Practices Act, and breach of contract counts.

16. Other than contending that the Thome settlement had exhausted the Policy, PIIC did not assert any potential coverage defenses or otherwise reserve any rights to deny coverage for the counts that continued, including the breach of contract count.

17. The trial resulted in a jury verdict in favor of Bellin against Kinsey & Kinsey with an award of damages in the amount of $1,390,000 on the breach of contract count. The jury found in favor of Kinsey & Kinsey and Brad Kinsey on the counts for fraud and violation of the Deceptive Trade Practices Act.

18. The trial court later reduced the damages on the breach of contract count by $640,000 and entered a final judgment on March 9, 2022 against Kinsey & Kinsey for damages in the amount of $750,000.00, plus costs of $36,749.29, for a total judgment of $786,749.29.

19. Subsequently, Bellin and Kinsey & Kinsey negotiated a confidential settlement of this judgment. The settlement agreement may be produced to PIIC under a protective order from the court. The settlement amount has been fully paid by Kinsey & Kinsey.

20. But for PIIC's assertion that the Policy has been exhausted by the Thome settlement, PIIC has waived any argument that Kinsey & Kinsey's settlement with Bellin is not covered by the Policy. PIIC defended Kinsey without any reservation of rights, despite being aware of provisions in its policy that would preclude coverage for Bellin's breach of contract count.

21. PIIC agreed that the breach of contract count was covered despite knowing that the policy's professional liability coverage only applied to liability arising from a "negligent act, error, or omission" and despite knowing that the policy excluded liability arising from "any liability you assume under contract."

22. PIIC now wants to "unwaive" its coverage position and reverse its agreement to provide coverage for the breach of contract count.

-4-

**Count I: Breach of Contract**
**(PIIC lacked the consent necessary to settle on behalf of Thome**
**and exhaust the $1 million per-claim limit of liability on the Policy.)**

23. Kinsey & Kinsey adopts and realleges Paragraphs 1 through 22, above, as this Paragraph 23 of Count I.

24. With respect to the defense and settlement of claims, the Policy states in pertinent part:

> **B. Defense And Settlement**
>
> **We**, in **your** name and on your behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any **claim** or suit.
>
> *We shall not settle any **claim** without **your** consent, such consent not to be unreasonably withheld.* * * *
> (Italics added for emphasis).

25. "**We**" is defined by the Policy to mean the insurance company, PIIC.

26. "**You**" and "**your**" are defined by the Policy in a broad fashion as follows:

> Q. **You, your, insured** means:
>
> 1. The **named entity**.
>
> 2. Any **subsidiary**.
>
> 3. Any independent contractor while acting on **your** behalf but solely as respects the provision of **professional services**.
>
> 4. Any **individual insured**.

27. "You" and "your," as defined, included both Kinsey & Kinsey, as the "**named entity**," and Brian Thome as an "**individual insured**."

28. The most reasonable construction of the consent-to-settle clause ("**We** shall not settle any **claim** without **your** consent") is that PIIC required the consent of both "you"s, "the "named

-5-

entity" (Kinsey & Kinsey), and "you," the "individual insured" (Brian Thome), to settle with Bellin on behalf of Thome.

29. Kinsey & Kinsey, as the "named entity" insured has an overriding interest in the policy, as it is responsible for the application, chooses the amount and nature of the coverage, pays the premium, has the sole power to cancel the Policy, and has the sole power to request an Extended Reporting Period.

30. The word "you" in the consent-to-settle clause cannot, as PIIC must contend, refer to Brian Thome alone; it must include the "named entity" insured, Kinsey & Kinsey. Indeed, in some places the Policy uses "you" to refer *solely* to the "named entity," Kinsey & Kinsey. For example, the Extended Reporting Period section speaks in terms of "you" cancelling the policy and "you" obtaining an extended reporting period. The "named entity," however, is the only insured with the right to cancel the Policy or obtain an extended reporting period. See Cancellation or Non-Renewal section of the Policy.

31. PIIC has taken the position that the $1 million Thome settlement exhausted all of the coverage under the Policy because the Bellin suit presented only a single "claim." Were there more than one claim, there would remain another $1 million available on the Policy's aggregate limit. In other words, PIIC took the position that the Bellin suit presented a single claim against multiple insureds: Kinsey & Kinsey, Brad Kinsey, and Brian Thome.

32. The consent-to-settle clause ("**We** shall not settle any **claim** without **your** consent") is not worded so as to permit PIIC to settle a multi-insured claim, or part of such claim, upon the consent of "an insured," upon the consent of "any insured," or upon the consent of "a single insured." Rather, the consent-to-settle clause requires the consent of "you," which is defined to

-6-

include both the "named entity," Kinsey & Kinsey, as well as the "individual insured," Brian Thome, for whom the settlement is being made.

33. Kinsey & Kinsey did not consent to the Thome settlement. In fact, on Monday morning, November 22, 2021, within hours of being informed of the "settlement in principle" (see ¶12, above), counsel for Kinsey & Kinsey and Brad Kinsey sent an email to Cope Ehlers (PIIC's counsel) stating: "Mr. Kinsey and K&K do not consent to Philadelphia's attempt to settle and pay the policy limits on behalf of Mr. Thome exclusively." Additionally, immediately in court on Monday morning, November 22, 2021, counsel for Kinsey & Kinsey and Brad Kinsey objected to the settlement as contrary to the Policy's consent-to-settle clause.

34. As the drafter of the Policy, PIIC had the ability and obligation to make clear whose consent was required for the settlement of a multi-insured claim or a portion thereof. It could have worded the consent-to-settle clause so as to permit settlement upon the consent of "any insured" involved in a multi-insured claim and could have worded the clause to make clear that such settlement could exhaust the per-claim limit as to the "named entity" and other insureds. PIIC failed to draft the consent-to-settle clause in a clear and unambiguous fashion.

35. PIIC breached the Policy by having only Brian Thome's consent for his settlement.

36. By breaching the Policy in this fashion, PIIC's payment of $1 million to Bellin was at PIIC's own risk, for its own account, and did not diminish the Policy's $1 million per-claim limit of liability. The $1 million per-claim limit remained intact after the Thome settlement.

37. PIIC further breached the Policy by refusing to provide the $1 million remaining on the Policy's per-claim limit to cover Kinsey & Kinsey's liability to and subsequent settlement with Bellin.

38. Kinsey & Kinsey has been damaged by PIIC's breach as follows:

-7-

a. Kinsey & Kinsey has had to settle its liability to Bellin with its own money, rather than with the $1 million of coverage still available under the Policy's per-claim limit of liability;

b. Kinsey & Kinsey has had to incur attorney's fees and other costs in opposing collection efforts by Bellin and in negotiating the Bellin settlement;

c. Kinsey & Kinsey was forced into bankruptcy by its inability to timely pay Bellin's judgment, incurring attorney's fees and costs due to the bankruptcy, losing the business of customers, and damaging its reputation.

39. PIIC's settlement on behalf of Thome and its purported exhaustion of the Policy's per-claim limit of liability was "vexatious and unreasonable" within the meaning of Section 155 of the Illinois Insurance Code (215 ILCS 5/155) because:

a. PIIC through its counsel Cope Ehlers P.C. in an email dated November 19, 2021, misrepresented PIIC's right to settle on Thome's consent alone, stating:

> Under Illinois law, "it has been held that a primary insurer may pay its entire policy limit in settlement of a single claim against a single insured without breaching any duties of good faith, even if its other insureds would be left without a defense or indemnification." See Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange, 397 Ill. App. 3d 512, 925 N.E.2d 1216 (1st Dist. 2010), citing Country Mutual Insurance Co. v. Anderson, 257 Ill. App. 3d 73, 80, 628 N.E.2d 499, 195 Ill. Dec. 35 (1993); see also Zurich Insurance Co. v. Raymark Industries. Inc., 118 Ill. 2d 23, 48-53, 514 N.E.2d 150, 112 Ill. Dec. 684 (1987).

This was a knowing misrepresentation of fact because none of the cited cases addressed the consent-to-settle language found in PIIC's Policy or any language similar to it. It was vexatious and unreasonable for PIIC and its counsel to represent to Kinsey & Kinsey that these cases gave it the right to settle on behalf of Thome with his consent alone.

-8-

5/15/2025 1:48:37 PM Batch: 166061061

b.  In the same email referred to in subparagraph a., above, PIIC through its counsel Cope Ehlers P.C. misrepresented the proposed Thome settlement, stating, "[S]ettlement would be made with the understanding that: (1) Kinsey & Kinsey and Brad Kinsey would receive a full set off of $1 million if it is not possible at this point to settle the claims against them and they would be found liable to Bellin … ." This was a knowing misrepresentation of fact because it misstated the settlement that was made.

c.  Following the Thome settlement, but prior to the verdict in the trial, PIIC failed to attempt to settle Bellin's claim against Kinsey & Kinsey and Brad Kinsey within the Policy's remaining $1 million per-claim limit of liability.

d.  Subsequent to the trial, PIIC attempted to settle Kinsey & Kinsey's liability to Bellin by offering $40,000—an admission that the Policy had not been exhausted by the Thome settlement.

WHEREFORE, Kinsey & Kinsey, Inc. prays for the following relief against Philadelphia Indemnity Insurance Company:

A.  A money judgment to reimburse Kinsey & Kinsey for its settlement with Bellin, for its other contract damages, plus prejudgment interest, the additional damages and attorneys' fees allowed by Section 155 of the Insurance Code (215 ILCS 5/155), and costs of suit; and

B.  Such further relief as may be deemed just and appropriate.

### Count II: Breach of Contract (in the alternative)
**(Following the Thome settlement, there remained $1 million available under the Policy's aggregate limit to cover the claims against Kinsey & Kinsey and Brad Kinsey.)**

40.  Kinsey & Kinsey adopts and realleges Paragraphs 1 through 22 and 24 through 27, above, as this Paragraph 40 of Count II.

5/15/2025 1:48:38 PM Batch: 166061061

41. "Claim" is defined by the Policy as follows:

**Claim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings involving **you** arising from any alleged **wrongful act**. **Claim** shall also include any request to toll the statute of limitations relating to a potential **claim** involving an alleged **wrongful act**.

42. In the consent-to-settle provision ("**We** shall not settle any **claim** without **your** consent"), if "you" is a single insured (*e.g.*, Thome), as PIIC must contend, then it would be reasonable to construe "you" the same way in the definition of "claim," such that a "claim" under the Policy is insured-specific, that is, against a single insured.

43. Then, Bellin's claims against Kinsey & Kinsey and Brad Kinsey were "claims" under the Policy separate from the "claim" against Thome that was settled. Accordingly, after the $1 million Thome settlement, there remained $1 million available under the Policy's $2 million aggregate limit to cover the claims against Kinsey & Kinsey and Brad Kinsey.

44. PIIC breached the Policy by refusing to provide the $1 million remaining on the Policy's aggregate limit to cover Kinsey & Kinsey's liability to and subsequent settlement with Bellin.

45. Kinsey & Kinsey has been damaged by PIIC's breach as follows:

a. Kinsey & Kinsey has had to settle its liability to Bellin with its own money, rather than with the $1 million of coverage still available under the Policy's aggregate limit of liability;

b. Kinsey & Kinsey has had to incur attorney's fees and other costs in opposing collection efforts by Bellin and in negotiating the Bellin settlement;

c. Kinsey & Kinsey was forced into bankruptcy by its inability to timely pay Bellin's judgment, incurring attorney's fees and costs due to the bankruptcy, losing the business of customers, and damaging its reputation.

-10-

46. PIIC's settlement on behalf of Thome and its purported exhaustion of all coverage under the Policy was "vexatious and unreasonable" within the meaning of Section 155 of the Illinois Insurance Code (215 ILCS 5/155) because:

a. PIIC through its counsel Cope Ehlers P.C. in an email dated November 19, 2021, misrepresented the proposed Thome settlement, stating, "[S]ettlement would be made with the understanding that: (1) Kinsey & Kinsey and Brad Kinsey would receive a full set off of $1 million if it is not possible at this point to settle the claims against them and they would be found liable to Bellin … ." This was a knowing misrepresentation of fact because it misstated the settlement that was made.

b. Following the Thome settlement, but prior to the verdict in the trial, PIIC failed to attempt to settle Bellin's claim against Kinsey & Kinsey and Brad Kinsey within the Policy's remaining $1 million on the aggregate limit of liability.

c. Subsequent to the trial, PIIC attempted to settle Kinsey & Kinsey's liability to Bellin by offering $40,000—an admission that the Policy had not been exhausted by the Thome settlement.

WHEREFORE, Kinsey & Kinsey, Inc. prays for the following relief against Philadelphia Indemnity Insurance Company:

A. A money judgment to reimburse Kinsey & Kinsey for its settlement with Bellin, for its other contract damages, plus prejudgment interest, the additional damages and attorneys' fees allowed by Section 155 of the Insurance Code (215 ILCS 5/155), and costs of suit; and

B. Such further relief as may be deemed just and appropriate.

-11-

Kinsey & Kinsey, Inc.

By its attorney:

James T. Nyeste
258 Maple Hill Road
Glencoe, IL 60022
847-242-0601
jnyeste@coveragelaw.com
IL ARDC # 3125383

-12-

5/15/20251:48:41 PM Batch: 166061061

# EXHIBIT A

5/15/2025 1:48:42 PM Batch: 166061061



**PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# Philadelphia Indemnity Insurance Company

# Commercial
# Lines
# Policy

THIS POLICY CONSISTS OF:

- DECLARATIONS
- COMMON POLICY CONDITIONS
- ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
- ONE OR MORE COVERAGE FORMS
- APPLICABLE FORMS AND ENDORSEMENTS

BJP-180-1 (12-98)

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 22 of 65 PageID #:28

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless signed by our authorized representative.

President & CEO

Secretary

BJP-190-1 (12-98)

5/15/2025 1:48:44 PM Batch: 166061061

# PHILADELPHIA
## INSURANCE COMPANIES
A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company
## COMMON POLICY DECLARATIONS

**Policy Number:** PHSD1161594

**Named Insured and Mailing Address:**
Kinsey & Kinsey, Inc.
26 N Park Blvd
Glen Ellyn, IL 60137-5712

**Producer:** 1173
Esser Hayes Insurance Group Inc.
1811 High Grove Ln Ste 139
Naperville, IL 60540

(630)355-2077

**Policy Period From:** 08/20/2016 **To:** 08/20/2017

at 12:01 A.M. Standard Time at your mailing
address shown above.

**Business Description:** Computer Bureaus/Consultants

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS
INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | **PREMIUM** |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | |
| Businessowners | |
| Workers Compensation | |
| Miscellaneous Professional | REDACTED |
| | REDACTED |
| **Total** | **$** |

CEO

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 24 of 65 PageID #:30

Philadelphia Indemnity Insurance Company

Form Schedule – Policy

**PolicyNumber:** PHSD1161594

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| Recurring Payment Flyer | 1212 | Recurring Payment Flyer |
| CSNotice-1 | 1014 | Making Things Easier |
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| LAH-Notice | 0813 | Policyholder Notice (Loss Assistance Hotline) |
| IL N 175 | 1111 | Illinois Notice To Policyholders |
| PP2015 | 0615 | Privacy Policy Notice |
| CPD-PIIC | 0614 | Common Policy Declarations |
| IL0985 | 0115 | Disclosure Pursuant To Terrorism Risk Insurance Act |

Page   1   of   1

5/15/20251:48:46 PM Batch: 166061061

# Enroll Today!

- Receive Invoices Electronically
- Pay Your Bills Online
- Set Up Recurring Payments
- Available 24/7
- Safe and Secure
- NO FEE!
- Environmentally Friendly

## Pay Your Bill Online

To pay your bills online you will need a User ID and Password to access our website. If you don't have a User ID please create one by visiting https://www.PHLY.com/myphly/newuser.aspx.

If you have a User ID, please login and click on "Online Bill Pay" and enter the necessary information to pay your bills.
Philadelphia Insurance Companies accepts electronic checks (a debit from your checking or savings account) as a method of payment. Please allow 2 to 3 business days for your payment to post to your account. This service is offered free of charge. Please note that credit card payments cannot be made online.

## Recurring Payment

Customers that receive their bill directly (and not from their agent) can sign up for recurring payment via automatic withdrawals from a checking, savings, or money market account for direct bill policies.

If you do not already have an account on **PHLY.com** you will need to create one by visiting **https://www.PHLY.com/myphly/newuser.aspx**. Once logged in please refer to "Links for You" and click the "Recurring Payment Instructions" to learn how to enroll. You can also click the "Online Bill Pay" tab on the left hand side to enroll in Recurring Payment.

### How to Create an Account on PHLY.com

1. Go to https://www.PHLY.com/myphly/newuser.aspx
2. Select the applicable BUTTON (insured or producer)
3. Complete the information on the page:
   - You will CREATE your own USER NAME and PASSWORD.
   - The password must be at least 7 characters and contain one number, one lower case letter, and one capital letter
4. Click CONTINUE when done.
5. On the next page, complete the PASSWORD RESET QUESTION. If you ever forget your password, we will ask you this security question and you will enter the answer you have selected.
6. Once you have received the page that states "CONTINUE TO MY PHLY," then you have successfully created the account.





**PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

Focus on the Things that Matter. We'll Handle the Risk.®



# PHILADELPHIA INSURANCE COMPANIES

A Member of the Tokio Marine Group

# Making Things Easier for You!

## PHLY CUSTOMER SERVICE

### Did you know...

- The Loss Assistance Hotline provides Management & Professional Liability policyholders with two FREE HOURS of legal consultation with knowledgeable attorneys on any matter that could potentially result in a claim under a PHLY policy
- You can review billing and payment history online
  **For example: Payment verifications go to MyPHLY on PHLY.com**
- You can pull up and print your invoices and policy documents online
- You can update your profile online
  **For example: Billing address or contact information changes**
- We offer live help within seconds: No complicated phone systems
- 94.4% of our policyholders would refer us to prospective customers*
- We provide 48 hour turnaround time on small business quotes and policy issuance in less than 10 days
- We provide interest free installments for accounts that generate at least $2,000 in premium

### Frequently Asked Questions

#### How can I get information about my insurance?
There are 5 different ways to contact Customer Service
- Customer Service 877.438.7459
- Customer Service Fax 866.847.4046
- Customer Service E-mail: custserv@phly.com
- Customer Service online chat
- PHLY.com – "Contact Us"

#### When can I contact Customer Service?
Customer Service is available Monday - Friday from 8:30 a.m.-8:00 p.m. EST

#### What forms of payment does PHLY accept?
PHLY accepts 3 forms of payment:
- Check sent to the lock box
- Check by phone payments through our IVR (877.438.7459 – Option 1), website, or contact center representatives
- Credit card payments through our live contact center representatives (Visa, MasterCard, and American Express)

### Claims

- Average policyholder first party automobile losses settled in 10 days or less
- Same or next business day acknowledgements of newly reported and opened claims
- Claims representation nationally with Commercial Liability Claims Examiner Niche expertise
- 24/7 claims service. Staff efficiencies with paperless and industry leading systems
- Staff of Subrogation and Recovery Examiners exclusively dedicated to recovery efforts for policyholder paid losses
- Experienced, consistent staff and department structure

### Risk Management Services

- National network of in-house risk management professionals providing direct support to policyholders
- Product specific web-based risk management solutions through PHLY.com
- Interactive Driver Training online courses and examination at no additional charge
- Regular e-flyer communications on relevant risk management issues
- Strategic partnerships with best-in-class vendors for discounted MVR checks, abuse training, GPS, and many more

### Automatically included on most accounts
PHLY Bell Endorsement - Includes $50,000 limits each for Business Travel Accident Benefit, Donation Assurance, Emergency Real Estate Consulting Fee, Identity Theft Expense, Image Restoration and Counseling, Key Individual Replacement Expenses, Kidnap Expense, Terrorism Travel Reimbursement, Workplace Violence Counseling. $25,000 limits for each Conference Cancellation, Fundraising Event Blackout, Political Unrest ($5,000 per employee), Temporary Meeting Space Reimbursement, and $1,500 Travel Delay Reimbursement.

### Honors, Awards, and Ratings

- America's Top 150 Workplaces
- Best Places to Work in Insurance (4th consecutive year)
- Stevie Awards
- ACE Awards
- Top Workplaces in Philadelphia
- Ward's Top 50 (13th consecutive year)
- National Underwriter Top 100 Insurance Groups (Tokio Marine) #29
- National Underwriter Top 100 Insurance Companies #41

## A Passion for Service!

Philadelphia Insurance Companies is the marketing name for the insurance company subsidiaries of the Philadelphia Consolidated Holding Corp., a Member of the Tokio Marine Group. Coverage(s) described may not be available in all states and are subject to underwriting and certain coverage(s) may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds © 2014 Philadelphia Consolidated Holding Corp., All Rights Reserved.
*All statistics contained herein were generated via an internal company survey of active policyholders.



Financial Strength Rating
A++ BEST
A++ Superior

# PHLY.com



TOKIO MARINE GROUP



**PHILADELPHIA INSURANCE COMPANIES**

A Member of the Tokio Marine Group

# Risk Management Services

## POLICYHOLDER NOTICE (LOSS ASSISTANCE HOTLINE)

As a free service benefit to its policyholders, PHLY has partnered with nationally recognized law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP (WEMED), to offer a toll-free Loss Assistance Hotline. The telephone number is 877.742.2201 or you can contact a WEMED attorney online at: apps.wilsonelser.com/pic/. This hotline provides you with 2 free hours of legal consultation with a knowledgeable attorney on any matter that you feel could result in a Claim under your professional or management liability policy. The Loss Assistance Hotline is NOT a Claim reporting service. To report a Claim, follow the Claim reporting instructions in your policy and also notify your insurance agent. If you have any questions concerning the Loss Assistance Hotline, please contact us at 800.759.4961 x2967.

Wilson Elser Moskowitz Edelman & Dicker LLP

## 800.873.4552

Philadelphia Insurance Companies is the marketing name for the insurance company subsidiaries of the Philadelphia Consolidated Holding Corp., a Member of the Tokio Marine Group. Your insurance policy, and not the information contained in this document, forms the contract between you and your insurance company. If there is a discrepancy or conflict between the information contained herein and your policy, your policy takes precedence. All coverages are not available in all states due to state insurance regulators. Certain coverage(s) may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds. | © 2013 Philadelphia Insurance Companies, All Rights Reserved.



## PHLY.com



TOKIO MARINE GROUP

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 28 of 65 PageID #:34

ILN1751111

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

ILN1751111        © Insurance Services Office, Inc., 2011        **Page 1 of 1**

PP 20 15 (06/15)

# PHILADELPHIA INSURANCE COMPANIES PRIVACY POLICY NOTICE

## Philadelphia Indemnity Insurance Company

The Philadelphia Insurance Companies value your privacy and we are committed to protecting personal information that we collect during the course of our business relationship with you. The collection, use and disclosure of certain nonpublic personal information are regulated by law.

This notice is for your information only and requires no action on your part. It will inform you about the types of information that we collect and how it may be used or disclosed. This does not reflect a change in the way we do business or handle your information.

### Information We Collect:

We collect personal information about you from the following sources:
- Applications or other forms such as claims forms or underwriting questionnaires completed by you;
- Information about your transactions with us, our affiliates or others; and
- Depending on the type of transaction you are conducting with us, information may be collected from consumer reporting agencies, health care providers, employers and other third parties.

### Information We Disclose:

We will only disclose the information described above to our affiliates and non-affiliated third parties, as permitted by law, and when necessary to conduct our normal business activities.

For example, we may make disclosures to the following types of third parties:
- Your agent or broker (producer);
- Parties who perform a business, professional or insurance functions for our company, including our reinsurance companies;
- Independent claims adjusters, investigators, attorneys, other insurers or medical care providers who need information to investigate, defend or settle a claim involving you;
- Regulatory agencies in connection with the regulation of our business; and
- Lienholders, mortgagees, lessors or other persons shown on our records as having a legal or beneficial interest in your policy.

We do not sell your information to others for marketing purposes. We do not disclose the personal information of persons who have ceased to be our customers.

### Protection of Information:

The Philadelphia Insurance Companies maintain physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of your personal information. We also limit employee access to personally identifiable information to those with a business reason for knowing such information.

### Use of Cookies and Opt-Out:

We may place electronic "cookies" in the browser files of your computer when you access our website. Cookies are text files placed on your computer to enable our systems to recognize your browser and so that we may tailor information on our website to your interests. We or our third party service providers or business partners may place cookies on your computer's hard drive to enable us to match personal information that we maintain about you so that we are able to pre-populate on-line forms with your information. We also use cookies to help us analyze traffic on our website to better understand your interests. Although we do not use your non-public personal information for this purpose, you may opt-out of cookies and advertising features through one of the available options including but not limited to Ads Settings in Google.com or the Network Advertising Initiative (NAI) Consumer Opt-out. Opting out does not mean you will no longer receive online advertising. It does mean that companies from which you opted out will no longer customize ads based on your interests and web usage patterns using cookies.

**How to Contact Us:**  Philadelphia Insurance Companies, One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004
Attention:  Chief Privacy Officer

POLICY NUMBER: **PHSD1161594**

IL 09 85 0115

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| **SCHEDULE – PART I** |
|---|
| Terrorism Premium (Certified Acts)   $0 |
| This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies): |
| |
| Additional information, if any, concerning the terrorism premium: |

**SCHEDULE – PART II**

**Federal share of terrorism losses** <u>85</u> % Year: 2015
(Refer to Paragraph **B.** in this endorsement.)

**Federal share of terrorism losses** <u>84</u> % Year: 2016
(Refer to Paragraph **B.** in this endorsement.)

**Federal share of terrorism losses** <u>83</u> % Year: 2017
(Refer to Paragraph **B.** in this endorsement)

**Federal share of terrorism losses** <u>82</u> % Year: 2018
(Refer to Paragraph **B.** in this endorsement)

**Federal share of terrorism losses** <u>81</u> % Year: 2019
(Refer to Paragraph **B.** in this endorsement)

**Federal share of terrorism losses** <u>80</u> % Year: 2020
(Refer to Paragraph **B.** in this endorsement)

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

IL 09 85 0115                © Insurance Services Office, Inc., 2015                **Page 1 of 2**

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015  IL 09 85 01 15

PI-PLSP-001 (08/07)



**PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

*Cover-Pro*<sup>sm</sup>

## Philadelphia Indemnity Insurance Company

### DECLARATIONS

**Policy Number:** PHSD1161594

**NOTICE: THIS IS A CLAIMS MADE POLICY. PLEASE READ THIS POLICY CAREFULLY. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR INVESTIGATION AND LEGAL COSTS. FURTHER NOTE THAT AMOUNTS INCURRED FOR SUCH COST SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT**

Item 1.   **Named Entity** and Address:
Kinsey & Kinsey, Inc.
26 N Park Blvd
Glen Ellyn, IL 60137-5712

Item 2.   **Policy Period:** From: 08/20/2016 To: 08/20/2017
(12:01 A.M. Standard Time)

Item 3.   Premium:   $  7,378.00

Item   4.   Limits of Liability:  (A)$  1,000,000   Each **Claim**, including **Claim Expense**

(B)$  2,000,000   Annual Aggregate, including **Claim Expense**

Item   5.   Deductible:   $   5,000   Deductible per **Claim**

Item   6.   Retroactive Date: 08/20/2008

Item   7.   Continuity Date:  08/20/2008

Item   8.   Additional Premium for Supplemental Extended Reporting Period: Refer to PI-PLSP-176

PI-PLSP-001 (08/07)

Item 9. **Named Entity's** Profession:

**Computer Bureaus/Consultants**

Endorsements: See Schedule

By accepting this Policy, the **Insured** agrees that the statements in the application are personal representations, that they shall be deemed material, and that this Policy is issued in reliance upon the truth of such representations.

_____        _____        _____
Authorized Representative                       Countersignature                              Countersignature Date

5/15/2025 1:48:56 PM Batch: 166061061

Philadelphia Indemnity Insurance Company

Form Schedule – Miscellaneous Professional Liability

**Policy Number:** PHSD1161594

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-PLSP-001 | 0807 | Cover Pro Policy Declarations Page |
| PI-BELL-1 IL | 1109 | Bell Endorsement |
| PI-CME-1 | 1009 | Crisis Management Enhancement Endorsement |
| PI-PLSP-002 | 0807 | Cover Pro |
| PI-PLSP-010 | 0807 | Nuclear Energy Liability Exclusion |
| PI-PLSP-102 | 0807 | Bankruptcy/Insolvency Exclusion |
| PI-PLSP-145 | 0911 | Computer/ Technology Consultant Pro Pak Elite |
| PI-PLSP-176 | 0807 | Additional Premium For Supplemental ERP |
| PI-ARB-1 IL | 0603 | Binding Arbitration |
| PI-PLSP-IL-1 | 0108 | Illinois Amendatory Endorsement |

PI-BELL-1 IL (11/09)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BELL ENDORSEMENT



PHILADELPHIA
INSURANCE COMPANIES

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

I.   **SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS**

The following is a summary of Limits of Liability or Limits of Insurance and/or additional coverages provided by this endorsement. This endorsement is subject to the provisions of the policy to which it is attached.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Business Travel Accident Expenses | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Assurance | $50,000 |
| Emergency Real Estate Consulting Fee | $50,000 |
| Fundraising Event Blackout | $25,000 |
| Identity Theft Expense | $50,000 |
| Image Restoration and Counseling | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Kidnap Expense | $50,000 |
| Political Unrest | $5,000 per employee; $25,000 policy limit |
| Temporary Meeting Space Reimbursement | $25,000 |
| Terrorism Travel Reimbursement | $50,000 |
| Travel Delay Reimbursement | $1,500 |
| Workplace Violence Counseling | $50,000 |

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

## II. CONDITIONS

### A. Applicability of Coverage

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

### B. Limits of Liability or Limits of Insurance

1. When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limits of liability or limits of insurance will apply. In no instance will multiple limits apply to coverages which may be duplicated within this policy. Additionally, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum limits of liability or limits of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limits of liability or limits of insurance under any one coverage part or policy.

2. Limits of liability or limits of insurance identified in Section **I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS** above are not excess of, but are in addition to the applicable Limits of Liability or Limits of Insurance stated in the Declarations.

### C. Claim Expenses

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

## III. ADDITIONAL COVERAGES

### A. Business Travel Accident Expenses

We will pay any reasonable and necessary expenses an insured incurs if a director or officer suffers injury or death while traveling on a common carrier for your business during the policy period.

For the purpose of Business Travel Accident Expenses coverage, injury means:

1. Physical damage to the body caused by violence, fracture, or an accident that results in loss of life not later than one hundred eighty (180) days after the policy expiration, the date of cancellation or the date of non-renewal;

2. Accidental loss of limbs or multiple fingers;

3. Total loss of sight, speech or hearing.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

Business Travel Accident Expenses shall not be payable if the cause of the injury was:

1. An intentional act by the insured;

2. An act of suicide or attempted suicide;

3. An act of war; or

© 2009 Philadelphia Indemnity Insurance Company

PI-BELL-1 IL (11/09)

4. A disease process.

## B. Conference Cancellation

We will reimburse the insured for any business-related conference expenses, paid by the insured and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a "natural catastrophe" or a "communicable disease" outbreak that forces the cancellation of the conference.

With respect to a conference cancellation claim, it is further agreed as follows:

1. The insured employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

2. The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.

The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

## C. Donation Assurance

If the insured is a 501(c)(3) status non-profit organization as defined in the United States Internal Revenue Code, we will reimburse the insured for "failed donation claim(s)."

With respect to any "failed donation claim," it is further agreed as follows:

1. The donor must not have been in bankruptcy, nor have filed for bankruptcy or reorganization in the past seven (7) years prior to the time said pledge was made to the insured;

2. For non-cash donations, our payment of a "failed donation claim" shall be based on the fair market value of said non-cash donation at the time of the "failed donation claim";

3. In the case of unemployment or incapacitation of a natural person donor and as a condition of payment of the "failed donation claim":

   a. Neither the natural person donor nor the insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date; and

   b. The donor shall be unemployed for at least sixty (60) days prior to a claim being submitted by the insured;

4. No coverage shall be afforded for a written pledge of funds or other measurable, tangible property to the insured dated prior to the policy period; and

5. A donation amount which is to be collected by the insured over more than a twelve (12) month period shall be deemed a single donation.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 38 of 65 PageID #:44

PI-BELL-1 IL (11/09)

**D. Emergency Real Estate Consulting Fee**

We will reimburse the insured any realtor's fee or real estate consultant's fee necessitated by the insured's need to relocate due to the "unforeseeable destruction" of the insured's "principal location" listed in the Declarations during the policy period. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**E. Fundraising Event Blackout**

We will reimburse the insured for "fundraising expenses" that are incurred due to the cancellation of a fundraising event caused by the lack of electric supply resulting in a power outage, provided the fundraising event is not re-scheduled. The fundraising event must have been planned at least thirty (30) days prior to the power outage. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**F. Identity Theft Expense**

We will reimburse any present director or officer of the named insured for "identity theft expenses" incurred as the direct result of any "identity theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the insured's first policy with us. The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**G. Image Restoration and Counseling**

We will reimburse the insured for expenses incurred for image restoration and counseling arising out of "improper acts" by any natural person.

Covered expenses are limited to:

1. The costs of rehabilitation and counseling for the accused natural person insured, provided the natural person insured is not ultimately found guilty of criminal conduct; this reimbursement to occur after acquittal of the natural person insured;

2. The costs charged by a recruiter or expended on advertising, for replacing an officer as a result of "improper acts"; and

3. The costs of restoring the named insured's reputation and consumer confidence through image consulting.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**H. Key Individual Replacement Expenses**

We will pay "key individual replacement expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the policy period which results in the loss of life during the policy period. The limit of insurance for this coverage is the lesser of $50,000 or ten (10) times the annual premium paid for this policy. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 39 of 65 PageID #:45

**I.   Kidnap Expense**

We will pay on behalf of any director or officer of the insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner," parent or child during the policy period. Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

1.   Fees and costs of independent negotiators;

2.   Interest costs for any loan from a financial institution taken by you to pay a ransom demand or extortion threat;

3.   Travel costs and accommodations incurred by the named insured;

4.   Reward money paid to an informant which leads to the arrest and conviction of parties responsible for loss covered under this insurance; and

5.   Salary, commissions and other financial benefits paid by you to a director or officer. Such compensation applies at the level in effect on the date of the kidnap and ends upon the earliest of:

   a.   Up to thirty (30) days after their release, if the director or officer has not yet returned to work;

   b.   Discovery of their death;

   c.   One hundred twenty (120) days after the last credible evidence following abduction that they are still alive; or

   d.   Twelve (12) months after the date of the kidnapping.

The limit of insurance for this coverage is $50,000 each policy period for all insureds combined. No deductible applies to this coverage.

**J.   Political Unrest Coverage**

We will reimburse any present director, officer, employee or volunteer of the named insured while traveling outside the United States of America for "emergency evacuation expenses" that are incurred as a result of an incident of "political unrest." This "political unrest" must occur during the policy period. No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel. The limit of insurance for this coverage is $5,000 per covered person, subject to a maximum of $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**K.   Temporary Meeting Space Reimbursement**

We will reimburse the insured for rental of meeting space which is necessitated by the temporary unavailability of the insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period. Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy. The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

© 2009 Philadelphia Indemnity Insurance Company

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 40 of 65 PageID #:46

PI-BELL-1 IL (11/09)

**L. Terrorism Travel Reimbursement**

We will reimburse any present director or officer of the named insured in the event of a "certified act of terrorism" during the policy period which necessitates that he/she incurs "emergency travel expenses." The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**M. Travel Delay Reimbursement**

We will reimburse any present director or officer of the named insured for any "non-reimbursable expenses" they incur as a result of the cancellation of any regularly scheduled business travel on a common carrier. The limit of insurance for this coverage is $1,500 per policy period for all insureds combined. A seventy-two (72) hour waiting period deductible applies to this coverage.

**N. Workplace Violence Counseling**

We will reimburse the insured for emotional counseling expenses incurred directly as a result of a "workplace violence" incident at any of the insured's premises during the policy period. The emotional counseling expenses incurred must have been for:

1. Your employees who were victims of, or witnesses to the "workplace violence";

2. The spouse, "domestic partner," parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

3. Any other person or persons who directly witnessed the "workplace violence" incident.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

## IV. DEFINITIONS

For the purpose of this endorsement, the following definitions apply:

**A.** "Certified act of terrorism" means any act so defined under the Terrorism Risk Insurance Act, and its amendments or extensions.

**B.** "Communicable disease" means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent, such as, but not limited to Meningitis, Measles or Legionnaire's Disease.

**C.** "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the named insured.

**D.** "Emergency evacuation expenses" mean:

1. Additional lodging expenses;

2. Additional transportation costs;

3. The cost of obtaining replacements of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

Page 6 of 9
© 2009 Philadelphia Indemnity Insurance Company

5/15/2025 1:51:34 PM Batch: 166061061

4. Translation services, message transmittals and other communication expenses.

provided that these expenses are not otherwise reimbursable.

E. "Emergency travel expenses" mean:

1. Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of a "certified act of terrorism"; and

2. The increased amount incurred which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "certified act of terrorism";

provided that these expenses are not otherwise reimbursable.

F. "Failed donation claim" means written notice to the insured during the policy period of:

1. The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured; or

2. The unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable, tangible property to the insured.

G. "Fundraising expenses" mean deposits forfeited and other charges paid by you for catering services, property and equipment rentals and related transport, venue rentals, accommodations (including travel), and entertainment expenses less any deposits or other fees refunded or refundable to you.

H. "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of any director or officer (or spouse or "domestic partner" thereof) of the named insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

I. "Identity theft expenses" mean:

1. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors; and

3. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

J. "Improper acts" means any actual or alleged act of:

1. Sexual abuse;

2. Sexual intimacy;

3. Sexual molestation; or

PI-BELL-1 IL (11/09)

4. Sexual assault;

committed by an insured against any natural person who is not an insured. Such "improper acts" must have been committed by the insured while in his or her capacity as an insured.

K. "Injury" whenever used in this endorsement, other than in Section **III. A. Business Travel Accident Expenses**, means any physical damage to the body caused by violence, fracture or an accident.

L. "Key individual replacement expenses" mean the following necessary expenses:

1. Costs of advertising the employment position opening;

2. Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

3. Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up an employment contract.

M. "Natural catastrophe" means hurricane, tornado, earthquake or flood.

N. "Non-reimbursable expenses" means the following travel-related expenses incurred after a seventy-two (72) hour waiting period, beginning from the time documented on the proof of cancellation, and for which your director or officer produces a receipt:

1. Meals and lodging;

2. Alternative transportation;

3. Clothing and necessary toiletries; and

4. Emergency prescription and non-prescription drug expenses.

O. "Political unrest" means:

1. A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

2. A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

3. A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff

for which either an alert or travel warning has been issued by the United States Department of State.

P. "Principal location" means the headquarters, home office or main location where most business is substantially conducted.

Q. "Unforeseeable destruction" means damage resulting from a "certified act of terrorism," fire, collision or collapse which renders all of the insured's "principal locations" completely unusable.

© 2009 Philadelphia Indemnity Insurance Company

5/15/20251:51:42 PM Batch: 166061061

PI-BELL-1 IL (11/09)

R. "Workplace violence" means any intentional use of or threat to use deadly force by any person with intent to cause harm and that results in bodily "injury" or death of any person while on the insured's premises.

© 2009 Philadelphia Indemnity Insurance Company

5/15/20251:51:45 PM Batch: 166061061

PI-CME-1 (10/09)

### <u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>

## CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement: 1) The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. 2) The words "we," "us" and "our" refer to the company providing this insurance.

**I.  SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS**

The following is the Limit of Liability provided by this endorsement. This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense                                                            $25,000

**II.  CONDITIONS**

**A.  Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable. All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

**B.  Limits of Liability or Limits of Insurance**

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

**C.  Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III.  ADDITIONAL COVERAGES**

**A.**  We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies. The amount of such reimbursement is limited as described in Section **II. CONDITIONS, B. Limits of Liability or Limits of Insurance**. No other obligation or liability to pay sums or perform acts or services is covered.

**B.**  We will reimburse only those "crisis management emergency response expenses" which are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six (6) months of the date the "crisis" was initiated.

Page 1 of 2

IV. **DEFINITIONS**

**A.** "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

**B.** "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm." However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

**C.** "Crisis management firm" means any service provider you hire that is acceptable to us. Our consent will not be unreasonably withheld.

**D.** "Incident" means an accident or other event, including the accidental discharge of pollutants, resulting in death or serious bodily injury to three or more persons.

**E.** "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

5/15/2025 1:51:52 PM Batch: 166061061

PI-PLSP-002 (08/07)

# Cover-Pro<sup>sm</sup>

### PROFESSIONAL LIABILITY INSURANCE POLICY

### THIS IS A CLAIMS MADE POLICY - PLEASE READ IT CAREFULLY

In consideration of the payment of the premium and in reliance upon all statements and information furnished to **us** including all statements made in the application form, its attachments and the material incorporated therein, which are incorporated herein and deemed to be a part of this policy, **we** agree as follows:

## I. INSURING AGREEMENTS

### A. Professional Liability Coverage

**We** shall pay on **your** behalf all sums, not exceeding the Limits of Liability and in excess of the applicable Deductible set forth in the Declarations, for which **you** shall become legally obligated to pay as **damages** resulting from any **claim** first made against **you** during the **policy period** or any subsequent extended reporting period arising out of a **wrongful act** committed after the **retroactive date** stated in Item 6. of the Declarations and prior to the end of the **policy period**.

### B. Defense And Settlement

**We**, in **your** name and on **your** behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any **claim** or suit.

**We** shall not settle any **claim** without **your** consent, such consent not to be unreasonably withheld. Should **you** refuse to consent to any settlement recommended by **us**, and acceptable to the claimant, and elect to further contest the **claim**, **our** liability for such **claim** shall not exceed the amount for which the **claim** could have been settled, including **claim expenses** incurred, up to the date of such refusal, plus 50% of covered **damages** and **claim expenses** in excess of such settlement amount, it being a condition of this insurance that the remaining 50% of such **damages** and **claim expenses** excess of the first settlement amount shall be borne by **you** at **your** own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the settlement amount exceeds the Deductible amount stated in Item 5. of the Declarations.

**You** shall not admit liability for, or make any voluntary settlement, or incur any costs or expenses in connection with any **claim** except with **our** written consent.

**We** shall not be obligated to pay any **claim** or judgment or **claim expenses** or to defend any suit after the applicable Limits of Liability have been exhausted.

### C. Supplemental Payments

**We** will pay up to two hundred and fifty dollars ($250) per **individual insured** per day for each day any such **individual insured** is required to appear at a trial, hearing or arbitration proceeding involving a **claim** against such **insured**, subject to a five thousand dollar ($5,000) sublimit of liability ("Trial Sublimit of Liability"). The Trial Sublimit of Liability shall be in addition to the Limits of Liability as shown in Item 4. of the Declarations.

## II. DEFINITIONS

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 47 of 65 PageID #:53

PI-PLSP-002 (08/07)

**THE FOLLOWING WORDS AND PHRASES APPEARING IN BOLD HAVE SPECIAL MEANING WHENEVER USED IN THIS POLICY:**

A. **Bodily injury** means physical injury, sickness, disease, disability, mental anguish, mental injury or emotional distress sustained by a person, including death resulting therefrom at any time.

B. **Claim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings involving **you** arising from any alleged **wrongful act**. **Claim** shall also include any request to toll the statute of limitations relating to a potential **claim** involving an alleged **wrongful act**.

C. **Claim expenses** means fees charged by any lawyer designated by **us** and all other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **claim**, if incurred by **us**. **Claim expenses** shall also include:

   1. Premiums on bonds to release attachments and appeal bonds, limited to that portion of such bonds that does not exceed the Limits of Liability of this policy, but without any obligation by **us** to apply for or furnish such bonds;

   2. Costs taxed against **you** in any suit except for any contempt citations;

   3. Interest accruing after the entry of judgment, but only for that portion of the judgment which does not exceed the applicable Limits of Liability, and only until **we** have tendered to the court or paid to **you our** portion of such judgment as does not exceed **our** Limit of Liability thereon; and

   4. Reasonable expenses incurred by **you** at **our** request in assisting in the investigation and defense of any **claim**, other than loss of earnings.

   **Claim expenses** shall not include:

   a. any amounts incurred in defense of any **claim** for which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty; or

   b. salaries, wages, overhead or benefit expenses associated with any **insured** except as specified in Section **I. INSURING AGREEMENTS**, Paragraph **C.** above; or

   c. salaries, wages, overhead or benefit expenses associated with your employees.

D. **Continuity Date** means the date listed in Item 7. of the Declarations.

E. **Damages** means a monetary judgment, award or settlement, including punitive damages or exemplary damages where insurable by law, but does not include the multiple part of multiplied damages, fines, taxes, sanctions or statutory penalties, including those based upon legal fees whether imposed by law, court or otherwise.

F. **Domestic partner** means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by **you**.

G. **Individual Insured** means:

5/15/2025 1:51:58 PM Batch: 166061061

PI-PLSP-002 (08/07)

1. Any current partner, director, officer, member or employee of **yours** while acting within the scope of their duties as such.

2. Any former or retired partner, director, officer, member or employee of **yours**, but only for those **professional services** rendered on behalf of the **named entity** prior to the date of separation or retirement from such entity(ies).

3. The lawful spouse or **domestic partner** of an **individual insured**, but only for actual or alleged **wrongful acts** of such **individual insured** for which said spouse or **domestic partner** may be liable as the spouse or **domestic partner** of such **individual insured**.

4. The heirs, executors, administrators, assignees, and legal representatives of each **insured** in the event of such **insured's** death, incapacity or bankruptcy as respects the liability of each **insured** as is otherwise covered herein.

H. **Named Entity** means the proprietor, firm or organization specified in Item 1. of the Declarations.

I. **Personal Injury** means wrongful entry or eviction or other invasion of private occupancy, the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

J. **Policy Period** means the period from the inception date of this policy to the expiration date as set forth in Item 2. of the Declarations or such earlier termination date, if any.

K. **Professional Services** means services rendered to others for a fee solely in the conduct of **your** profession as stated in Item 9. of the Declarations.

L. **Property Damage** means physical injury to tangible property, including all resulting loss of use of such property or loss of use of tangible property that is not physically injured.

M. **Retroactive Date** means the date listed in Item 6. of the Declarations.

N. **Subsidiary** means:

1. A corporation or other entity of which the **named entity** owns on or before the inception of the **policy period** more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its **subsidiaries** or the right to elect, appoint or designate more than 50% of such entity's board of directors, trustees, or managers and which is set forth in the application or, if the entity is a limited partnership, the **named entity** or one of its **subsidiaries** must serve as the general partner.

   A corporation or other entity which becomes a **subsidiary** during the **policy period** and whose revenues total less than 15% of the total consolidated revenues of the **named entity** as disclosed by **you** on the most recently completed application as of the inception date of this **policy period**.

2. A corporation or other entity, which becomes a **subsidiary** during the **policy period** other than a corporation or other entity described in Paragraph 1. above, but only upon the condition that within 90 days of its becoming a **subsidiary**, the **named entity** shall have provided **us** with a completed application and all materials requested by **us** and agreed to any additional premium and/or amendment of the provisions of this policy required by **us** relating to the addition of such new **subsidiary**. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named entity** paying when due any additional premium required by **us** relating to such new **subsidiary**. Failure to provide the requested information within the 90 days or failure to pay the additional premium when requested will result in the denial of coverage to said **subsidiary** under this policy.

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 49 of 65 PageID #:55

A corporation or other entity becomes a **subsidiary** when the **named entity** owns more than 50% of the issued and outstanding voting stock, either directly or indirectly through one or more of its **subsidiaries** or serves as a general partner for a limited partnership. A corporation ceases to be a **subsidiary** when the **named entity** ceases to own more than 50% of the issued and outstanding voting stock, either directly or indirectly through one or more of its **subsidiaries** or is removed or ceases to act as general partner of a limited partnership. Coverage for **claims** made against any **subsidiary** or the **insureds** of any **subsidiary** shall only apply to **wrongful acts** of such **subsidiary** or the **insureds** of such **subsidiary** occurring after the effective time that such **subsidiary** became a **subsidiary** and prior to the time that such **subsidiary** ceased to be a **subsidiary**.

O.  **We**, **us**, **our** means the insurance company shown in the Declarations (a stock insurance company).

P.  **Wrongful Act** means a negligent act, error, or omission committed or alleged to have been committed by **you** or any person for whom **you** are legally responsible in the rendering of **professional services**. **Wrongful Act** shall include **personal injury** arising out of the rendering of **professional services**.

Q.  **You**, **your**, **insured** means:

1.  The **named entity**.

2.  Any **subsidiary**.

3.  Any independent contractor while acting on **your** behalf but solely as respects the provision of **professional services**.

4.  Any **individual insured**.

## III.  EXCLUSIONS

**THIS POLICY DOES NOT APPLY TO ANY CLAIM OR CLAIM EXPENSES:**

A.  arising out of, resulting from, based upon or in consequence of, any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which **you** are not legally entitled; however, **we** will defend **suits** alleging the foregoing until there is a judgment, final adjudication, adverse admission, plea *nolo contendere* or no contest or finding of fact against **you** as to such conduct.

B.  for **bodily injury** or **property damage**.

C.  arising out of any costs of corrections, costs of complying with non-pecuniary relief, fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which this policy may be construed.

D.  arising out of any Disciplinary Proceeding against any **insured**, however, **we** will defend **you** for said Disciplinary Proceeding up to a sublimit of liability ("Disciplinary Proceeding Sublimit") of ten thousand dollars ($10,000). The Disciplinary Proceeding Sublimit shall be part of, not in addition to, the Limits of Liability as shown in Item 4 of the Declarations and shall no way serve to increase the Limits of Liability. Defense for disciplinary proceedings will still be subject to all other terms and provisions in this policy.

5/15/20251:52:06 PM Batch: 166061061

**E.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any failure to effect or maintain any insurance or bond.

**F.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any infringement of copyright, patent, trademark service mark, trade name, or misappropriation of ideas or trade secrets.

**G.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any violation of the Securities Exchange Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any state Blue Sky or Securities Law or any rules, regulations or amendments issued in relation to such acts, or any similar state, federal or foreign statutes or regulations.

**H.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any express warranties or guarantees or any liability **you** assume under contract unless **you** would have been legally liable in the absence of such contract.

**I.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **claim** brought by any **insured** against another **insured.**

**J.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any pending or prior litigation as of the **continuity date** of this policy, as well as all future **claims** or litigation based on the pending or prior litigation derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

**K.** alleging, arising out of, resulting from, based upon or in consequence of, directly or indirectly, any employment practices or any discrimination against any person or entity on any basis, including but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, sex, sexual orientation or pregnancy.

**L.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any discharge, dispersal, release or escape of any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, spores, fungi, germs, soot, fumes, asbestos, acids, alkalis, chemicals and waste (including, but not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials) into or upon land, the atmosphere or any water-course or body of water or any cost or expense arising out of any direction, request or voluntary action to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants.

**M.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any services as an attorney, accountant, actuary, tax preparer, tax consultant, real estate broker, securities broker, securities dealer, registered representative of a securities broker or dealer, financial planner, nurse, doctor of medicine, veterinary medicine or dentistry, architect or engineer.

**N.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **professional services** performed for any entity in which any **insured** is a principal, partner, officer, director or owns or controls more than three percent (3%) of the issued and outstanding stock of such entity.

**O.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any disputes involving **your** fees or charges.

**P.** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **wrongful act** committed prior to the **policy period** and subsequent to the **retroactive date** for which you gave notice under any prior insurance policy or which you had any basis to believe might reasonably be expected to give rise to a **claim** under this Policy

No **wrongful act** of any **individual insured** nor any fact pertaining to any **individual insured** shall be

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 51 of 65 PageID #:57

PI-PLSP-002 (08/07)

imputed to any other partner, director, officer or employee for the purposes of determining the applicability of Exclusion **A** above.

## IV. LIMITS OF LIABILITY

Regardless of the number of (a) **insureds** under this policy, (b) persons or entities who allege **damages** or (c) **claims** made or suits brought, **our** liability is limited as follows:

A. **We** shall be liable to pay that portion of any **damages** and **claim expenses** in excess of the applicable Deductible as stated in the Declarations for any one **claim** up to the Limits of Liability as stated in Item 4. of the Declarations. A Deductible shall apply to each and every **claim**, including **claim expenses**, and such Deductible shall be borne by **you**. The Deductible shall be uninsured and be at **your** own risk.

B. **Our** maximum aggregate liability for all **damages** and **claim expenses** arising out of all **claims** made during the **policy period** shall be the Limit of Liability stated in the Declarations. The Limit of Liability during any Extended Reporting Period added to this policy shall be the remaining portion, if any, of the aggregate Limit of Liablty provided by this policy as stated in Item 4. of the Declarations.

C. **Claims** based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single **claim** and shall be considered first made during the **policy period** or the Extended Reporting Period (if applicable), of the policy in which the earliest **claim** arising out of such act(s) or circumstance(s) was first made and all **damages** and **claim expenses** shall be subject to the same Each **Claim** Limit of Liability.

## V. GENERAL CONDITIONS

### A. Policy Territory:

This policy shall extend to any **wrongful act** committed anywhere in the world.

All premiums, limits, retentions, **damages**, **claim expenses** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **damages or claims expenses** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **damages** or **claims expenses** is due, respectively.

### B. Notice and Claim Reporting Provisions:

Notice hereunder shall be given by **you** or on **your** behalf in writing to **us** at One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004 Attn: Claims Department.

1. **You** shall, as a condition precedent to **our** obligations under this policy, give written notice to **us** as soon as practicable during the **policy period**, or during the Extended Reporting Period (if any) of any **claim** made against **you**.

2. If during the **policy period,** or during the Extended Reporting Period (if any), but not during the Automatic Extension, **you** shall become aware of any circumstance which could reasonably be expected to give rise to a **claim**, **you** shall give written notice to **us** regarding all particulars of said incident as soon as practicable after **you** become aware of said circumstance. Such written notice of any circumstance must include:

PI-PLSP-002 (08/07)

   a.   the specific **wrongful act**; and

   b.   the **damages** which have or may result from such **wrongful act**; and

   c.   the circumstances by which **you** first became aware of such **wrongful act**.

Any **claim** then arising out of such **wrongful act** will be considered to have been first made at the time of the original notice.

**C. Extended Reporting Period:**

1. If **we** or **you** cancel or refuse to renew this policy for reasons other than non-payment of premium, **we** will provide to **you** a 60 day Automatic Extension of the coverage granted by this policy, at no additional charge, for any **claim** first made against **you** and reported to **us** during the 60 day extension period but only as respects **wrongful acts** committed after the **Retroactive Date** (if any) stated in the Declarations and prior to the date of cancellation or non-renewal. In the event you purchase replacement coverage for this policy or a Supplemental Extended Reporting Period under **2.** below, said 60 day Automatic Extension period will terminate upon the effective date of said replacement coverage or Extended Reporting Period.

2. If **we** or **you** cancel or refuse to renew this policy for reasons other than non-payment of premium, **you** shall have the right to purchase, for the appropriate additional payment as listed in Item 8. of the Declarations, a Supplemental Extended Reporting Period of a duration and for a premium as described on the Declarations. This extension will provide coverage granted by this policy for any **claim** first made against **you** and reported to **us** during the Supplemental Extended Reporting Period. This Supplemental Extended Reporting Period only applies to **wrongful acts** committed after the **Retroactive Date** (if any) stated in the Declarations and prior to the date of cancellation or non-renewal. **You** must apply for this extension in writing accompanied by payment of the appropriate premium prior to the expiration of the 60 day Automatic Extension period under **1.** above.

3. All premium paid with respect to an extension period shall be deemed to be fully earned as of the first day of the extension period. For the purpose of this clause, any change in premium, retention, Limits of Liability or other terms on renewal shall not constitute a refusal to renew.

4. Limits of Liability available during any Extended Reporting Period shall not exceed the balance of the Limits of Liability in effect at the time the policy terminated.

5. In the event similar insurance is in force covering any **claims** first made during the 60 day extension period or during any Extended Reporting Period, coverage provided by this policy shall be excess over any such other insurance.

**D. Deductible:**

It is **your** responsibility to pay the Deductible amount as stated in Item 5. of the Declarations as the result of each **claim**. **We** may pay part of or all of the Deductible amount to effect a settlement of any **claim**, however, upon notification of any such action taken, **you** shall promptly reimburse **us** for all of the Deductible amount as has been paid by **us**.

**E. Your Duties in the Event of a Claim:**

1. Pursuant to **B. Notice and Claim Reporting Provisions**, Paragraph **1.** above, **you** shall give written notice containing particulars sufficient to identify the **insured**, time, place and underlying circumstances of the **claim** to **us**.

5/15/2025 1:52:12 PM Batch: 166061061

PI-PLSP-002 (08/07)

2. **You** shall admit no liability, make no payments, assume no obligation and incur no expense related to such **claim** without **our** written consent.

3. When a **claim** is made against **you**, **you** shall immediately forward to **us** every demand, notice, summons, or other process received by **you** or **your** representatives.

4. **You** shall cooperate with **us** and, upon **our** request, assist in making settlements and in the conduct of suits. **You** shall attend hearings, trials and depositions and shall assist in securing and giving evidence and in obtaining the attendance of witnesses.

5. **You** shall not demand or agree to arbitration of any **claim** without **our** written consent. Such consent shall not be unreasonably withheld.

**F. Subrogation:**

If **we** pay any amount hereunder as **damages**, **claim expenses** or any combination thereof, **we** shall be subrogated to **your** rights of recovery against any person, firm or organization. **You** shall execute and deliver instruments and papers and do whatever is necessary to secure such rights. **You** shall not waive or prejudice such rights prior to or subsequent to any **claim**.

**G. Changes:**

Notwithstanding anything to the contrary, no provision of this policy may be amended, waived or otherwise changed except by endorsement issued by **us** to form part of this policy.

**H. Action Against Us:**

1. No action shall lie against **us** unless, as a condition precedent thereto, there shall have been compliance with all terms of this policy, and until the amount of **your** obligation to pay shall have been finally determined either by judgment entered in a court of law against **you** or by **your** written agreement with the claimant or claimant's legal representative and **us**.

2. Any person or the legal representatives thereof who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join **us** as a party to any action against **you** to determine **your** liability, nor shall **we** be impeded by **you** or their legal representatives. **Your** bankruptcy or insolvency or that of **your** successors in interest shall not relieve **us** of **our** obligations hereunder.

**I. Change in Control:**

If during the **policy period**:

1. the **named entity** merges into or consolidates with another entity such that the **named entity** is not the surviving entity; or

2. another entity, person, or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by other entity(ies) or person(s) of more than fifty percent (50%) of the outstanding securities representing the rights to vote for the election of the **named entity's** directors;

(either of the above events hereinafter referred to as the "Transaction") then coverage shall continue until the later of the termination of the **policy period** or such other date to which **we** may agree, but only with respect to **wrongful acts** which occurred prior to the Transaction and are otherwise covered by this policy and premium shall be considered fully earned.

Page 8 of 10

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 54 of 65 PageID #:60

PI-PLSP-002 (08/07)

### J. Cancellation or Non-Renewal:

1. This policy may be canceled by the **named entity** by surrender thereof and selection of a future date to **us** at the address stated in the Declarations or by mailing to **us** written notice stating when thereafter such cancellation shall be effective. If this policy is canceled by **you**, **we** shall retain the customary short-rate portion of the premium.

2. The policy may be canceled by **us** by mailing to the **named entity** at the address stated in the Declarations written notice stating when, not less than forty-five (45) days thereafter or ten (10) days in the case of cancellation for non-payment of premium or Deductible, such cancellation shall become effective. If the policy is canceled by **us**, earned premium shall be computed pro-rata.

3. In the event **we** refuse to renew this policy, **we** shall mail to the **named entity**, at the address stated in the Declarations, not less than forty-five (45) days prior to the expiration of this policy, written notice of non-renewal. Such notice shall be conclusive on all **insureds**.

4. The mailing of Notice of Cancellation or Non-Renewal as aforementioned shall be sufficient notice of the intent to cancel or non-renew. The effective date of cancellation or non-renewal specified in the notice shall terminate this **policy period**.

### K. Conformity to Statutes:

Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

### L. Assignment:

Assignment of interest under this policy shall not bind **us** unless **our** consent is endorsed hereon.

### M. Authorization Clause:

By acceptance of this policy, **you** agree that the statements in the application are **your** agreements and representations and that this policy is issued in reliance upon the truth of such representations. This policy embodies all existing agreements between **you** and **us** relating to this insurance.

### N. Other Insurance:

This insurance is excess over any other valid and collectable insurance available to **you** except as respects such insurance written to apply specifically in excess of this insurance.

### O. Liability Coverage Disputed and Reservation of Rights:

If a controversy or dispute arises with regard to whether coverage exists with respect to a **claim** submitted by **you** under the coverage sections of this policy, **we** may elect to provide a defense under a Reservation of Rights whereby **we** reserve **our** rights to deny and reject any **claim** for **damages**. In the event it is finally established by judgment or agreement that **we** have no liability with respect to such a **claim**, **you** shall reimburse **us** upon demand all sums and monies paid by **us** to defend and/or settle such **claim**.

### P. False or Fraudulent Claims:

PI-PLSP-002 (08/07)

If any **insured** shall commit fraud in presenting any **claim** as regards amounts or otherwise, this insurance shall become void as to such **insured** from the date such fraudulent **claim** is presented.

**Q Headings**

The descriptions in the headings of this policy and any endorsements attached hereto are solely for convenience, and form no part of the terms and conditions of coverage.

**IN WITNESS WHEREOF, WE HAVE CAUSED THIS POLICY TO BE SIGNED BY OUR PRESIDENT AND SECRETARY. THIS POLICY SHALL NOT BE VALID UNLESS COUNTERSIGNED ON THE DECLARATIONS PAGE BY OUR DULY AUTHORIZED REPRESENTATIVE.**

5/15/2025 1:52:17 PM Batch: 166061061

PI-PLSP-010 (08/07)

**<u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>**

## NUCLEAR ENERGY LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COVER-PRO**<sup>sm</sup>

In consideration of the premium paid, it is agreed that this policy does not apply to any **claim** arising out of, resulting from, based upon or in consequence of, directly or indirectly, any **bodily injury** or **property damage** resulting from radioactive, toxic or explosive properties of nuclear material which includes, but is not limited to, "source material", "special nuclear material" and "by product material" as those terms are defined in the Atomic Energy Act of 1954 and any amendments thereto and any similar provisions of any federal, state or local statutory or common law.

All other terms and conditions of this policy remain unchanged.

5/15/2025 1:52:19 PM Batch: 166061061

PI-PLSP-102 (08/07)

## <u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>

## BANKRUPTCY/INSOLVENCY EXCLUSION

This endorsement modifies insurance provided under the following:

**COVER-PRO**<sup>sm</sup>

In consideration of the premium paid, it is agreed that this policy does not apply to any **claim** arising out of, based upon, or attributable to:

1. the bankruptcy, insolvency or financial failure of the **Insured**; or
2. the **Insured's** seeking protection under federal bankruptcy laws (or any similar laws); or
3. the bankruptcy, insolvency or financial failure of any entity with whom the **Insured** transacts business.

All other terms and conditions of this policy remain unchanged.

Page 1 of 1

5/15/20251:52:21 PM Batch: 166061061

PI-PLSP-145 (09/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMPUTER / TECHNOLOGY CONSULTANT
# PRO PAK ELITE

This endorsement modifies and is subject to the insurance provided under the following:

**COVER-PRO<sup>sm</sup>**

The policy is amended as follows:

**I.** The following is added to Section **II. DEFINITIONS**:

The term **Computer Consultant** or **Technology Consultant** as stated in Item 9. of the Declarations is defined as follows:

**Computer Consultant** and **Technology Consultant** both mean an individual or firm retained by a third party for the purpose of:

**A.** Analysis of operating problems and client needs associated with computer hardware and software;

**B.** Creation, recommendation, installation and/or implementation of computer hardware and software;

**C.** Customization of, servicing of and monitoring of computer hardware and software; and

**D.** Training of personnel in the utilization of computer hardware and software.

**Unauthorized access** means a third party's access to a computer, computer system, or computer network, without authorization or exceeding authorization.

**II. ADDITIONAL EXCLUSIONS**

Section **III. EXCLUSIONS**, is amended to include the following:

**THIS POLICY ALSO DOES NOT APPLY TO ANY CLAIM OR CLAIM EXPENSES ARISING OUT OF:**

**AA.** Any mechanical or electrical failure, including any power interruption, surge, brownout or blackout.

**BB.** The failure to prevent **unauthorized access** to, or use of an electronic system or computer program, unless such **unauthorized access** or use is a result of **your wrongful act**.

**CC.** Any **claim** arising out of the failure of any real, personal or intangible property to have at any point or points in time any guaranteed economic value.

**DD.** Any **claim** arising out of the transfer of funds, monies, or securities to or from any account or institution or guaranteeing of the availability of funds.

**EE.** Any **claim** based upon or arising out of incorrect advertised description of any article or commodity or any mistake in advertised price or any false, misleading, deceptive or fraudulent advertising.

Page 1 of 2

**FF.** Any **wrongful act** committed with the knowledge that it was a **wrongful act**.

**GG.** Any **claim** arising out of or connected with the performance or failure to perform services for any person or entity:

    **1.** Which is owned by or controlled by any **insured**;

    **2.** Which owns or controls any **insured**;

    **3.** Which is affiliated with any **insured** through any common ownership or control; or

    **4.** In which any **insured** is a director, officer, partner or principal stockholder.

**HH.** Any sale or defect of any non-customized commercially available computer software or hardware products.

## III. DEFENSE COSTS IN ADDITION TO THE LIMIT

Section **IV. LIMITS OF LIABILITY**, is deleted in its entirety and replaced with the following:

Regardless of the number of (a) **insureds** under this policy, (b) persons or entities who allege **damages** or (c) **claims** made or suits brought, **our** liability is limited as follows:

**A.** **We** shall be liable to pay that portion of any **damages** in excess of the applicable Deductible as stated in the Declarations for any one **claim** up to the Limits of Liability as stated in Item 4. of the Declarations. A Deductible shall apply to each and every **claim**, including **claim expenses**, and such Deductible shall be borne by **you**. The Deductible shall be uninsured and be at **your** own risk.

**B.** **Our** maximum aggregate liability for all **damages** arising out of all **claims** made and reported during the **policy period** shall be the Limit of Liability stated in the Declarations as Aggregate. The Limit of Liability during any Extended Reporting Period added to this policy shall be the remaining portion, if any, of the Aggregate Limit of Liability provided by this policy as stated in Item 4. of the Declarations.

**C.** **Claims** based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single **claim** and shall be considered first made during the **policy period** or the Extended Reporting Period (if applicable), of the policy in which the earliest **claim** arising out of such act(s) or circumstance(s) was first made and all **damages** shall be subject to the same Each **Claim** Limit of Liability.

**D.** Payment by **us** of **claim expenses** incurred with any **claim**, shall not serve to reduce the Limit of Liability stated in Item 4. of the Declarations.

5/15/2025 1:52:25 PM Batch: 166061061

PI-PLSP-176 (08/07)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL PREMIUM FOR SUPPLEMENTAL EXTENDED REPORTING PERIOD

This endorsement modifies and is subject to the insurance provided under the following:

**COVER-PRO**sm

The Declarations are amended as follows:

Item 8. Is deleted in its entirety and replaced with the following:

Item 8.   The Additional Premium for Supplemental Extended Reporting Period shall be as follows:

| | |
|---|---|
| 12 months: | 75% of Annual Premium |
| 24 months: | 125% of Annual Premium |
| 36 months: | 150% of Annual Premium |
| 48 months: | 175% of Annual Premium |
| 60 months: | 200% of Annual Premium |
| Unlimited: | 285% of Annual Premium |

All other terms and conditions of this policy remain unchanged.

5/15/2025 1:52:27 PM Batch: 166061061

PI-ARB-1 IL (6/03)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BINDING ARBITRATION

Wherever, used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "first named insured", and "insured" mean the Named Corporation, the Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "other insured(s)" means all other persons or entities afforded coverage under this policy.

This endorsement modifies coverage provided under the Coverage Part to which it is attached.

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then provided that it is agreed upon by both parties, the matter may be submitted for arbitration.  In lieu of arbitration, the insured may elect the option of filing a lawsuit to resolve the matter.

If both parties mutually agree to the voluntary arbitration procedure, then each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  Each party will:

1.  Pay the expenses it incurs; and

2.  Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

All other terms of the policy remain unchanged.

5/15/2025 1:52:40 PM Batch: 166061061

PI-PLSP-IL-1 (01/08)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COVER-PRO**<sup>sm</sup>

I.   Section III. **Exclusions**, Paragraph **L.**, is hereby deleted and replaced with the following:

arising out of, resulting from, based upon or in consequence of, directly or indirectly, any discharge, dispersal, release or escape of any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, spores, fungi, germs, soot, fumes, asbestos, acids, alkalis, chemicals and waste (including, but not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials) into or upon land, the atmosphere or any water-course or body of water or any cost or expense arising out of any direction, request or voluntary action to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any pollutants. This exclusion shall not apply **Property Damage** or **Bodily Injury** resulting from heat, smoke or fumes from a "hostile fire". A "hostile fire" means a fire, which becomes uncontrollable or breaks out from where it was intended to be.

II.   Section **V. GENERAL CONDITIONS**, Paragraph **C. Extended Reporting Period** is deleted and replaced with the following:

1.   If **we** or **you** cancel or refuse to renew this policy, **we** will provide to **you** a 60 day Automatic Extension of the coverage granted by this policy, at no additional charge, for any **claim** first made against **you** and reported to **us** during the 60 day Automatic Extension period but only as respects **wrongful acts** committed after the **Retroactive Date** (if any) stated in the Declarations and prior to the date of cancellation or non-renewal.

2.   If **we** or **you** cancel or refuse to renew this policy, **you** shall have the right to purchase, for the appropriate additional payment as listed in Item 8. of the Declarations, a Supplemental Extended Reporting Period of one of the following durations: 12 months; 24 months; 36 months; 48 months; 60 months, or unlimited. This extension will provide coverage granted by this policy for any **claim** first made against **you** and reported to **us** during the Supplemental Extended Reporting Period and starts when the 60 day extension period under **1.** above ends. This Supplemental Extended Reporting Period only applies to **wrongful acts** committed after the **Retroactive Date** (if any) stated in the Declarations and prior to the date of cancellation or non-renewal. **You** must apply for this extension in writing prior to the expiration of the 60 day extension period under **1.** above.

3.   All premium paid with respect to an extension period shall be deemed fully earned as of the first day of the extension period. For the purpose of this clause, any change in premium terms or terms on renewal shall not constitute a refusal to renew.

4.   The Limits of Liability available during any extended reporting period shall not exceed the balance of the Limits of Liability in effect at the time the policy terminated.

Page 1 of 3

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 63 of 65 PageID #:69

PI-PLSP-IL-1 (01/08)

**III.** Section **V. GENERAL CONDITIONS**, Paragraph **J. Cancellation or Non-Renewal** is amended as follows:

Subparagraphs **2.** and **3.** are deleted and replaced with the following:

**2.** The policy may be canceled by **us** by mailing to the **named entity**, at the last mailing address known to **us**, written notice stating when such cancellation shall become effective. Notice shall be given at least ten (10) days prior to the date on which such cancellation shall become effective if cancellation is for non-payment of premium or deductible. If the policy has been in effect for sixty (60) days or less, **we** shall give notice at least thirty (30) days prior to the effective date of cancellation.

After this Policy has been in effect for sixty (60) days, this Policy may be cancelled by or on **our** behalf only for one of the following reasons:

1) nonpayment of premium;

2) this Policy was obtained through a material misrepresentation;

3) any **Insured** violated any of the terms and conditions of this Policy;

4) the risk originally accepted has measurably increased;

5) certification to the Director of the Department of Insurance of the loss of reinsurance by **us** which provided coverage to **us** for all or a substantial part of the underlying risk insured; or

6) a determination by the Director of the Department of Insurance that the continuance of the Policy could place **us** in violation of the insurance laws of Illinois.

**We** shall mail written notice of cancellation to the **named entity** and the **named entity's** agent or broker of record at the last address known to **us** and any mortgagee or lienholder, if known. Notice of cancellation shall be provided at least ten (10) days before the effective date of cancellation if cancellation is for nonpayment of premium. If cancellation is for any of the reasons listed in 2) through 6) above, and the Policy has been in effect for sixty (60) days or less, then notice of cancellation shall be provided at least thirty (30) days before the effective date of cancellation. After the Policy has been in effect for sixty-one (61) days or more, notice of cancellation shall be provided at least sixty (60) days before the effective date of cancellation. The mailing of such notice shall be sufficient and the effective date of cancellation shall become the end of the **policy period**. **We** shall maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service. The notice shall state the reason or reasons for cancellation.

**3.** Should **we** decide to nonrenew this Policy, then **we** shall mail written notice of nonrenewal to the **named entity**, the agent or broker of record at the last address known to **us** and any mortgagee or lienholder, if known. **We** shall mail such notice at least sixty (60) days before the end of the **policy period**. The notice shall state the reason or reasons for nonrenewal. The mailing of such notice shall be sufficient and **we** shall maintain proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial delivery service.

Case: 1:25-cv-06212 Document #: 1-2 Filed: 06/04/25 Page 64 of 65 PageID #:70

PI-PLSP-IL-1 (01/08)

**IV.** Section **V. GENERAL CONDITIONS**, Paragraph **N. Other Insurance** is deleted and replaced with the following:

**N. Other Insurance:**

If **you** have any other insurance against a loss covered by this policy, the insurance provided by this policy shall share proportionately with any other valid or collectible insurance contract.

**V.** Section **V. GENERAL CONDITIONS**, Paragraph **P.** False or Fraudulent Claims is deleted and replaced with the following:

**P. False or Fraudulent Claims:**

If any **insured** shall commit fraud in presenting any **claim** as regards amounts or otherwise, this insurance shall be canceled and the **claim** denied in accordance with the Illinois Insurance Code.



**Illinois Department of Insurance**
320 West Washington Street
Springfield, Illinois 62767

CERTIFIED MAIL™

9214 7969 0099 9790 1656 2556 84

neopost
05/07/2025
US POSTAGE $013.26

FIRST-CLASS MAIL
IMI

ZIP 62767
041L12204694

Philadelphia Indemnity Insurance Company
Three Bala Plaza East- Suite 400
Bala Cynwyd, PA 19004-1403