**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KINSEY & KINSEY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25-cv-6212 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| PHILADELPHIA INDEMNITY | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kinsey & Kinsey, Inc. ("Kinsey"), is a consulting firm based in Illinois that was involved in a 2018 lawsuit for breach of contract with a client. Kinsey's professional liability insurer, Defendant Philadelphia Indemnity Insurance Co. ("PIIC"), managed Kinsey's defense in the suit. The case had three defendants: Kinsey & Kinsey; Brad Kinsey ("Mr. Kinsey"), one of the company's principals; and Brian Thome ("Mr. Thome"), a Kinsey employee. Shortly after the trial began, the plaintiff made a settlement offer of $1 million to Mr. Thome alone. PIIC accepted the offer, over the objections of Kinsey and Mr. Kinsey. At the end of the trial, the jury found Kinsey liable for breach of contract with a total judgment of $786,749.

Kinsey believes that PIIC owes recompensation for the money that Kinsey eventually paid on the judgment. PIIC has refused to pay, because it believes that its $1 million settlement payment for Mr. Thome fully exhausted its indemnification obligations to all defendants. PIIC also maintains that, whatever its obligations at the time, Kinsey is now precluded from bringing a claim that it should have raised in a prior proceeding. Before the Court today are Kinsey's motion for partial summary judgment as to breach of contract; PIIC's motion for summary judgment as to breach of contract and injury; and PIIC's separate motion for judgment on the pleadings as to preclusion.

After review of the parties' many filings and the complicated history of this case, the Court concludes that Kinsey's claims against PIIC were not yet ripe at the time of the prior proceeding. As such, Kinsey was not obligated to raise its claims at the time, and it is not precluded from doing so now. The Court also agrees that PIIC breached its contract with Kinsey by failing to seek Kinsey's consent before agreeing to the settlement, and that a reasonable jury could find that Kinsey was injured by the breach. It accordingly grants summary judgment on the question of breach to Kinsey with respect to Count I of the complaint; grants summary judgment to PIIC with respect to Count II of the complaint; and denies both summary judgment motions in all other respects.

## BACKGROUND

Unless otherwise indicated, the following details are undisputed by the parties and are deemed admitted. The Court also takes judicial notice of the findings of fact in the prior dispute between Kinsey and PIIC. *See Philadelphia Indem. Ins. Co. v. Bellin Mem'l Hosp., Inc.*, No. 22-CV-2246, 2023 WL 6388208, at *2 (N.D. Ill. Sept. 29, 2023) (Seeger, J.) [hereinafter *PIIC v. Bellin*], *aff'd,* 126 F.4th 532 (7th Cir. 2025).

**Kinsey's Contract with Bellin and Its Insurance Policy with PIIC**

In 2015, Bellin Memorial Hospital ("Bellin"), of Green Bay, Wisconsin, contracted with Kinsey to install new software for Bellin's HR systems. This was a substantial undertaking. Nine months after the project began, Bellin learned that Kinsey had not installed the software system it had contracted for, but rather different, older software. When Bellin confronted Kinsey about this issue, Kinsey submitted a new proposal that would implement the contracted software for an additional cost. As Judge Seeger memorably described it, "That proposal landed like a ton of bricks, and the parties landed in state court." *PIIC v. Bellin* at *3. Bellin sued Kinsey, Mr. Kinsey, and Mr. Thome (the initial project lead) in the Circuit Court of Wisconsin ("the Wisconsin Case"). Bellin accused all

– 2 –

defendants of intentional misrepresentation/fraud; negligent misrepresentation; and Wisconsin Deceptive Trade Practices Act violations. It also brought a breach of contract claim against Kinsey alone, a charge for which the judge entered a directed verdict as to liability.

PIIC provided indemnity insurance to Kinsey. The policy provided for $1 million in coverage per claim, with a maximum coverage of $2 million per year. Dkt. 23, ex. A at 12 [hereinafter Ins. Pol'y]. Several provisions within the insurance policy have been significant in the current and prior litigation. First, the insurance policy specified that PIIC had the "right and duty" to defend Kinsey, the "named entity" that purchased the policy, as well as Mr. Kinsey and Mr. Thome, who received coverage for actions taken within the scope of their employment. *Id.* at *26. Although PIIC had the right to appoint attorneys, determine trial strategy, and conduct settlement negotiations, the policy stated that PIIC "shall not settle any claim without your consent, such consent not to be unreasonably withheld" (the "consent-to-settle clause"). *Id.* The Policy further defined "you, your, [and] insured" to mean:

1. The named entity [*i.e.*, Kinsey & Kinsey].
2. Any subsidiary.
3. Any independent contractor while acting on your behalf but solely as respects the provision of professional services.
4. Any individual insured.

*Id.* at *29. As relevant here, "Individual Insured" means "Any current partner, director, officer, member or employee of yours while acting within the scope of their duties as such." It is undisputed that Mr. Kinsey and Mr. Thome were Individual Insureds under Kinsey's policy with PIIC. *Id.* at *27–28. Finally, the policy defines a "claim" as "a demand received by you for money or services… arising from any alleged wrongful act." *Id.* at *26. However, "Claims based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single claim" for the purpose of the $1 million per-claim liability limit. *Id.* at *31.

**The Wisconsin Case**

PIIC managed the defendants' legal defense. It appointed counsel, with Mr. Thome receiving separate counsel from Kinsey and Mr. Kinsey. Pursuant to the definitions in the policy, PIIC considered the case to present only a single claim against all three defendants. PIIC attempted to obtain a settlement for all defendants in exchange for the policy limit of $1 million, but Bellin insisted that it would not accept less than $2.3 million. Then, shortly after the trial began, Bellin offered to drop the charges against only Mr. Thome in exchange for $1 million ("the Thome Settlement"). Bellin made the offer at 9:03am on Friday, November 19, 2021, and requested a response by 5pm the following Sunday. PIIC attempted to arrange a set-off for the remaining defendants, in the event of a verdict against them, but Bellin would only accept a set-off for claims covered by the policy. Shortly after receiving the offer, Mr. Thome's attorney wrote to PIIC that he believed "Mr. Thome is more than likely to be assessed with damages verdict to him alone in excess of $1m policy"; however, the attorney did not explain how he reached this conclusion. Dkt. 27-1.

PIIC accepted the settlement for Mr. Thome. It did not seek the consent of Kinsey or Mr. Kinsey, although it did inform them that it intended to accept the settlement. PIIC advised Kinsey and Mr. Kinsey that although the settlement would exhaust the available coverage, PIIC understood Illinois law to permit an insurer to pay the entire policy limit for a single insured, even if that would leave co-defendants without indemnification. PIIC nevertheless promised to continue its representation of Kinsey and Mr. Kinsey at trial. At 11:29pm on Sunday, November 21, 2021, PIIC informed Kinsey and Mr. Kinsey that it had agreed to the settlement in principle. Early the next morning, counsel for Kinsey and Mr. Kinsey saw the emails describing the settlement that had been sent over the weekend. Counsel immediately wrote to PIIC to declare that Kinsey and Mr. Kinsey did not consent to the settlement. Counsel for Kinsey and Mr. Kinsey also objected to the settlement later that day in court, as they believed the settlement violated the consent-to-settle clause of the policy.

– 4 –

Nevertheless, PIIC and Bellin finalized the settlement later that day, and Mr. Thome was dismissed from the suit.

That same day, Bellin dropped its negligent misrepresentation claim against Kinsey and Mr. Kinsey, leaving only the fraudulent misrepresentation, Deceptive Trade Practices Act, and breach of contract claims. This was significant because the negligent misrepresentation claim was unquestionably covered by Kinsey's insurance policy, and so any liability found for that claim would be subject to the set-off negotiated in the Thome Settlement. The breach of contract claim was likely not covered by the policy, and, if so, its liability would not be subject to the set-off. Kinsey alleges that PIIC promised that the breach of contract claim would be covered; PIIC says that it only represented that the breach of contract claim *might* be covered. As noted above, the judge had already directed a verdict as to liability for breach of contract; the only question as to that claim was damages.

The trial continued, and the next day (November 23, 2021), the jury returned its verdict. It found only that Kinsey was liable to Bellin for $1,390,000 for breach of contract. The judge subsequently found that Kinsey's contract with Bellin precluded consequential damages, and accordingly entered $750,000 in expectation damages, plus costs of $36,749.29, for a total judgment of $786,749.29 ("the Wisconsin Judgment").

**The Set-Off Litigation**

After the conclusion of the Wisconsin Case, Bellin attempted to collect its verdict. However, PIIC claimed that the judgment was subject to the negotiated set-off. Given that the verdict was smaller than the Thome Settlement, PIIC argued that Bellin should receive nothing further. Bellin, of course, argued that its breach of contract claim was not covered by Kinsey's PIIC policy and therefore was not subject to the set-off. PIIC then sued for a declaratory judgment that the breach was covered under the policy. *See PIIC v. Bellin.*

Bellin and Kinsey were defendants in the case, although Kinsey was only a nominal defendant. *Id.* at *7. At the time, its interests were fully aligned with PIIC's, because neither party wanted to be on the hook for three-quarters of a million dollars. In fact, PIIC paid for Kinsey's representation in *PIIC v. Bellin*. Kinsey filed an answer, which included a counter/cross-claim against PIIC and Bellin. However, the text of the counter/cross-claim makes clear that Bellin was the only real target. As Judge Seeger put it, "Kinsey & Kinsey essentially seeks the same declaratory judgment as Philadelphia Indemnity." *Id.* at *16. Kinsey did not raise its current breach of contract claims against PIIC as a counterclaim in *PIIC v. Bellin*.

Judge Seeger ruled that the breach of contract claim was not covered by the insurance policy, and that the ensuing judgment was therefore not subject to the negotiated set-off. The Seventh Circuit affirmed Judge Seeger's ruling. *Philadelphia Indem. Ins. Co. v. Bellin Mem'l Hosp.*, 126 F.4th 532 (7th Cir. 2025). After the Seventh Circuit ruling, Kinsey settled its liability to Bellin and paid the settlement amount in full.

**The Current Litigation**

With the question of Kinsey's liability to Bellin settled, Kinsey now seeks recompensation from PIIC. It filed the instant case in the Circuit Court of Cook County on May 15, 2025. PIIC timely removed the case on the basis of diversity jurisdiction. The parties conferred and agreed to move rapidly through the initial stages of litigation. On July 21, 2025, the parties filed the three instant motions.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A court may

– 6 –

also base its decision on information subject to proper judicial notice, such as matters of public record. *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In other words, all plausible allegations and reasonable inferences are viewed in the light most favorable to the non-moving party. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and… draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

## DISCUSSION

As a threshold matter, PIIC argues in its motion for judgment on the pleadings that Kinsey's claims in this litigation were compulsory counterclaims in *PIIC v. Bellin*. PIIC contends that Kinsey's decision not to raise its claims against PIIC in that litigation thus constitutes a waiver of the claims, precluding Kinsey from bringing them now.

In its motion for summary judgment, Kinsey primarily argues that PIIC is liable for breach of contract for approving the Thome Settlement without Kinsey's consent. Kinsey also argues in the

alternative that if the term "your consent" in the policy is understood to refer only to the consent of the settling party (*i.e.*, Mr. Thome), then this understanding of "you" should inform the policy's definition of "claim." In this reading of the contract, the Wisconsin Case would be considered to present multiple claims, each subject to a $1 million claim limit (with a $2 million cap on total liability). Kinsey argues that either of its proposed interpretations of the contract would entitle it to summary judgment on the question of breach of contract as a matter of law.

PIIC opposes Kinsey's interpretations. It seeks a summary judgment that it did not breach the contract because the consent-to-settle clause only required the consent of Mr. Thome and because all three defendants in the Wisconsin Case were subject to the same claim within the meaning of the policy. It also argues that, even if PIIC breached the contract, the result of *PIIC v. Bellin* means that Kinsey suffered no injury because the Wisconsin Judgment was not covered under the terms of the policy.

The Court will first address PIIC's preclusion argument. It will then turn to the questions of contract interpretation in the two motions for summary judgment, followed by the question of injury in PIIC's motion for summary judgment.

## I.      Preclusion

PIIC contends that Kinsey's claims are barred by *res judicata*, through either the compulsory counterclaim rule or the rule against splitting a cause of action.[1] Dkt. 29 at *7.

As relevant here, Federal Rule of Civil Procedure 13(a) requires parties to include in their pleadings any counterclaim "that—at the time of its service—the pleader has against an opposing party if the claim… arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" If a party fails to raise a compulsory counterclaim, it is considered waived,

---

[1] PIIC also says that collateral estoppel precludes Kinsey's claims. However, it advances no argument related to collateral estoppel. As such, the Court will not address it further.

and the party is precluded by the doctrine of *res judicata* from pursuing it in subsequent litigation. *Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912, 916–17 (7th Cir. 2008). However, this rule does not apply to claims that are not ripe for adjudication. *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 360 (7th Cir. 1990)) ("It would be bizarre" to require a defendant to raise "a counterclaim that could not have been filed with the answer because it did not exist when the answer was due"). As the Supreme Court has held, "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580–581 (1985).

PIIC argues that Kinsey's claims in the instant case were a compulsory counterclaim in *PIIC v. Bellin*, when Kinsey and PIIC were (at least nominally) opposed parties. In PIIC's view, the fact that Kinsey did not raise its instant claims in the prior litigation precludes them from doing so now. Kinsey responds that it didn't "have" its claim against PIIC within the meaning of Rule 13(a) at the time of *PIIC v. Bellin* because its damages were contingent on the outcome of that case. Under Illinois law, a breach of contract claim requires showing "injury to the plaintiff" resulting from the breach. *Xcel Supply, LLC v. Horowitz*, 2017 IL App (1st) 152277-U, ¶ 46. In *PIIC v. Bellin*, PIIC sought a declaratory judgment that Kinsey's breach-of-contract liability in the Wisconsin Case was covered under the terms of its policy (and therefore subject to the set-off negotiated in the Thome Settlement). As Judge Seeger put it, "If the set-off applies, then Kinsey & Kinsey owes nothing. In that case, Kinsey & Kinsey would have no reason to bring a claim against Philadelphia Indemnity." *PIIC v. Bellin* at *17. If Judge Seeger had ruled for PIIC and (implicitly) Kinsey, that ruling would have voided Kinsey's cause of action by eliminating Kinsey's injury.[2] As such, Kinsey contends that because an essential element

---

[2] This also likely explains why Mr. Kinsey is not a plaintiff to this case. The Wisconsin Case did not result in personal liability for Mr. Kinsey, and accordingly, he had no injury, even if PIIC breached the contract with respect to him.

(injury) of its claim was still contingent during *PIIC v. Bellin*, the claim was unripe and therefore not compulsory.

PIIC replies that "All the facts giving rise to Kinsey's claim against PIIC had already transpired" by the time PIIC filed its complaint in *PIIC v. Bellin*. If PIIC breached the contract, then it maintains that "Kinsey was damaged as soon as PIIC entered into" the Thome Settlement. Dkt. 37 at *8. But that statement is not true. If a contractual breach inherently created damages, then injury would be a superfluous element of the cause of action. What were Kinsey's damages at the point that PIIC agreed to the settlement? None had yet occurred; its injury was contingent on future events, and the damages remained contingent at the time PIIC filed its declaratory action against Bellin.[3] Because the Thome Settlement left uncertain the question of whether Kinsey's breach-of-contract against Bellin was subject to the set-off, the damages were completely contingent until that question was resolved. As such, Kinsey's current claim was not ripe for adjudication during the prior proceeding, and Kinsey accordingly was not required to raise it at the time.[4]

Finally, PIIC argues that, even if Kinsey's current claims were not compulsory counterclaims in *PIIC v. Bellin*, Kinsey's decision to make a counterclaim at all in the prior litigation means that its current claims should be barred by the rule against claim splitting. However, PIIC's claim splitting

---

[3] Kinsey also seeks punitive damages for bad faith and attorney's fees, but that is irrelevant to the question of whether it had a viable cause of action during *PIIC v. Bellin*—under Illinois law, punitive damages cannot be awarded when actual damages are zero. *U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 804 F.3d 889, 892 (7th Cir. 2015) (citing *Hayman v. Autohaus on Edens, Inc.*, 315 Ill. App. 3d 1075, 248 (2000)).

[4] Kinsey also argues that Rule 13(a) was inapplicable because it was not actually opposed to PIIC in *PIIC v. Bellin*. The Court is inclined to agree; the interests of the parties were fully aligned in that litigation. And that is unsurprising, given that PIIC was paying for Kinsey's representation. Dkt. 32, ex. A ¶¶ 10–11, ex. J; *see also* dkt. 29-9 at *4 (PIIC's combined memorandum from *PIIC v. Bellin*, submitted as an exhibit to the 12(c) Motion, which confirms that PIIC was paying for Kinsey's representation in that litigation). Judge Seeger also went out of his way to specify that Kinsey was only a "nominal defendant," *PIIC v. Bellin* at *1, 7, 19, and to clarify that Kinsey's counterclaim against PIIC wasn't actually "adversarial," *Id.* at *19. At a minimum, it seems clear that the *PIIC v. Bellin* action would not have counted as a case or controversy under Article III had Kinsey been the only defendant. *See Arris Grp., Inc. v. Brit. Telecommunications PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011). However, because the ripeness finding above is sufficient to determine that Rule 13(a) wasn't applicable in *PIIC v. Bellin*, the Court need not spend more time on this point.

argument fails for the same reason as its compulsory counterclaim argument, namely, because the claim was not ripe until after Judge Seeger issued his judgment in *PIIC v. Bellin*. Like other applications of *res judicata*, the rule against claim splitting "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995); *see also Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based on claims that accrue after a previous suit was filed."). Here, even assuming *arguendo* that Kinsey's counter- and crossclaim against PIIC and Bellin actually constituted a legal claim against PIIC, *see PIIC v. Bellin* at \*19–20, Kinsey's instant claims were unripe at the time and thus are not ones that "could have been raised" in the prior litigation. Accordingly, the doctrine against claim splitting (and, for that matter, any other application of *res judicata)*, does not apply here.

The Court denies PIIC's motion for judgment on the pleadings.

## II.     Breach of Contract

Both parties have moved for summary judgment on the question of whether PIIC breached its insurance contract with Kinsey. Here there are no material facts in dispute; the only question is how to understand the terms of the insurance policy. Kinsey presents two arguments in the alternative, either of which (it argues) would establish a breach of contract by PIIC. First, Kinsey argues that PIIC breached the contract by agreeing to the Thome Settlement despite Kinsey's explicit lack of consent. In the alternative, Kinsey argues that the Wisconsin Case should be understood to present multiple claims under Kinsey's insurance policy, each subject to a $1 million liability limit (with a $2 million global limit). PIIC contends that Kinsey's interpretations of the contract are unreasonable and that PIIC is the party entitled to summary judgment on the question of breach.

The Court observes that "interpretation of an insurance contract is a legal issue that may be decided on a motion for summary judgment." *American Bankers Ins. Co. of Florida v. Shockley*, 3 F.4th

322, 327 (7th Cir. 2021). When interpreting an insurance contract, the Illinois Supreme Court[5] has prescribed certain rules of construction:

> To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.* However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy.

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108–09 (Ill. 1992) (internal citations omitted).

### A.    The Consent-to-Settle Clause

As noted above, Kinsey's insurance policy specifies that that PIIC "shall not settle any claim without your consent, such consent not to be unreasonably withheld." Ins. Pol'y *26. It also defines "you" and "your" to refer to several possible entities; as relevant here, the term could refer to any or all of Kinsey, Mr. Kinsey, and Mr. Thome. *Id.* at *29. Kinsey argues that the policy's use of "your" in the consent-to-settle clause unambiguously requires the consent of the named entity (*i.e.*, Kinsey) along with the settling individual insured (*i.e.*, Mr. Thome); or else that the use of "your" is ambiguous and under Illinois precedent must be construed against PIIC, the drafter of the contract. Dkt. 24 at *8–9 [hereinafter Pl. MSJ Br.][6]; *see Outboard Marine*, 154 Ill. 2d at 108–09.

The Court agrees that the use of "your" in the consent-to-settle clause is ambiguous. To start, the term "you" (and associated derivates) can be grammatically ambiguous even in everyday usage. Because "you" can be singular or plural, it is often unclear whether a speaker intends to refer to one

---

[5] Kinsey argues, and the Court agrees, that the contract should be evaluated under Illinois law. *See* dkt. 24 at *5. PIIC does not argue otherwise.

[6] The Court uses "Pl. MSJ" abbreviations to refer to the briefs filed for Kinsey's motion for partial summary judgment and "Def. MSJ" abbreviations to refer to briefs filed for PIIC's motion.

person or multiple. The inherent ambiguity of "you" is compounded by PIIC's definition of the term within the contract, which specifies four different kinds of entities that the term could refer to, each of which may have multiple members. Ins. Pol'y at *29. PIIC's exhortation that "The court's role is not to seek out ambiguity where none exists" may be true as a general statement of law, but it is utterly inapplicable to the contractual language at issue here. Dkt. 34 at *2 [hereinafter Pl. MSJ Resp.] (citing *Hobbs v. Hartford Ins. Co.*, 214 Ill.2d 11, 291 (2005)). PIIC could easily have drafted the contract to make clear that only the party to a settlement has the power to refuse consent. Instead, it chose to use a pronoun of inherently ambiguous grammatical number.

PIIC attempts to invoke the interpretive canon of *ejusdem generis* in defense of its proposed contractual composition, but those efforts fail. As PIIC correctly cites, *ejusdem generis* says that "[W]here general words follow specific words… the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates v. United States*, 574 U.S. 528, 545 (2015) (bracketed text in original). PIIC argues that the proceeding sentence of the policy provides the clear, unambiguous meaning: "We, in your name and on your behalf, shall have the right and duty to investigate, defend, and conduct settlement negotiations, including selection of defense counsel, in any claim or suit." Ins. Pol'y *26. Applying *ejusdem generis*, PIIC contends that the "the term 'your' in the consent-to-settle clause… is limited to the insured in whose name and on whose behalf the insurer negotiated a settlement." Pl. MSJ Resp. *2–3. But PIIC's interpretation of the passage does not make sense. Stating that PIIC will have the right to manage litigation "in your name and on your behalf… in any claim or suit" does nothing to clarify who "you" is when there are three defendants to the same suit and where the contractual definitions dictate that all three defendants are subject to the same claim. The language therefore remains ambiguous.

PIIC also raises what might be called policy objections to Kinsey's preferred interpretation of the contract. PIIC argues that "Kinsey's construction would give Kinsey veto power over settlements

to the detriment of Kinsey's co-insureds" and that, accordingly, "Kinsey's construction is not in interests of all insureds." Pl MSJ Resp *4 (citing *Socy. Ins. v. Cermak Produce No. 11, Inc.*, 684 F. Supp. 3d 739, 746 (N.D. Ill. 2023) (Kim, J.); *see also* dkt. 26 at *3, 6–7 [hereinafter Def. MSJ Br.]. PIIC cites a Michigan state case, *Jayakar v. North Detroit General Hosp.*, in which that court ruled that permitting an individual insured to veto a settlement approved by a named entity "would virtually paralyze [the insurer] in its efforts to fulfill its contractual duty to defend." 182 Mich. App. 108, 112 (Mich. App. 1990). But *Jayakar* was a case adjudicated under Michigan law. In Illinois, an ambiguous insurance contract must be construed against the drafting insurer. *Outboard Marine*, 154 Ill. 2d at 108–09. No such rule of construction entered the fray in *Jayakar*. *See* 182 Mich. App. at 110–10. As such, *Jayakar* provides limited utility (for either party) in resolving the instant motions.

Nevertheless, PIIC's policy objections are not without merit. Kinsey's preferred reading might not "paralyze" PIIC's ability to defend its clients, but it would certainly make it more difficult. The Court is also hesitant to issue a ruling that might be read to give an employer absolute veto power over its insured employees' ability to settle. Fortunately, no such ruling is required here. This Court makes no pronouncements about how insurance contracts involving multiple co-insureds should generally be read under Illinois law. Instead, the Court merely finds that *this* contract features ambiguous language concerning whose consent to settle must be sought. Accordingly, the Court rules that, under the terms of *this* contract, PIIC was prohibited from approving the Thome Settlement without Kinsey's consent.[7] As such, PIIC breached the contract when it settled Mr. Thome's case.

---

[7] PIIC also advances an argument that, even if Kinsey's consent was required, Kinsey acted unreasonably in withholding its consent. D MSJ *8. However, the record shows that PIIC had already agreed to the settlement in principle before Kinsey even indicated whether it consented. Dkt. 27-2. Additionally, after Kinsey made its lack of consent plain, nothing indicates that PIIC made any effort to ascertain the reasonableness of Kinsey's objection before finalizing the settlement. *See id.* As such, the evidence indicates that the reasonableness of Kinsey's refusal to consent had not been definitely established at the time that PIIC agreed to the settlement. Additionally, the Court does not believe that Kinsey acted unreasonably in refusing to consent to a settlement that would likely result in the exhaustion of its available indemnification funds.

The Court therefore grants Kinsey's motion and denies PIIC's motion with respect to the interpretation of the consent-to-settle clause.

B.    *The Number of Claims*

Kinsey's argument in the alternative—that the Wisconsin Case should be interpreted under the terms of the insurance policy to present multiple claims—need not occupy the Court for long. It is likely a moot point with respect to Kinsey's motion, given the Court's resolution of the interpretation of the consent-to-settle clause. But PIIC has also requested summary judgment on this issue. Under the terms of the insurance contract, "Claims based on or arising out of the same act or circumstance, or a series of similar or related acts or circumstances shall be considered a single claim" for the purpose of the $1 million per-claim liability limit. *Id.* at *31. Here, regardless of the construction of "you" in the consent-to-settle clause, it is clear that Bellin's claims against all three defendants in the Wisconsin Case arose out of the same acts and circumstances and accordingly constitute a single claim within the meaning of the contract. The Court therefore grants PIIC's motion and denies Kinsey's motion with respect to the interpretation of the number of claims.

## III.    Injury

PIIC moves for summary judgment on an additional issue not addressed in Kinsey's motion. PIIC argues that, regardless of whether it breached the contract, Kinsey suffered no injury from that breach, because (as Judge Seeger determined) the ensuing judgment in the Wisconsin Case was not covered under the policy. Def. MSJ Br. *2, 11. In other words, even if the entire $1 million liability limit had been available, PIIC believes that it still would not have been obligated to pay anything on the eventual judgment. *Id.* at *11. Kinsey agrees that PIIC is not obligated to pay anything directly for the Wisconsin Judgment. Dkt. 33 at *2 [hereinafter Def. MSJ Resp.]. However, it argues that PIIC is

nevertheless liable to Kinsey because PIIC approved the Thome Settlement in bad faith and because it is equitably estopped from denying coverage.

With respect to bad faith, Kinsey argues that PIIC must have known when it agreed to the Thome Settlement (a) that it was dramatically overpaying relative to any reasonable estimate of the liability against Mr. Thome; and (b) that the inevitable result of agreeing to a set-off only for covered charges was that Bellin would drop its negligent misrepresentation count (which would certainly have been covered) but maintain its other counts, which likely or certainly would not have been covered. Def. MSJ Resp. *8; *see also PIIC v. Bellin* at *5. In other words, PIIC allegedly entered into a settlement that it knew would needlessly zero out the available indemnification coverage and that would cause Bellin to focus only on counts for which the set-off would not be applicable. Had PIIC not agreed to the settlement, some portion of Kinsey's liability stemming from the Wisconsin judgment may have been related to covered charges, for which PIIC would have had to pay up to the liability limit (or which would have been subject to the negotiated setoff). Kinsey asserts that PIIC's acceptance of the Thome agreement therefore violated its duty to exercise good faith and deal fairly with all its insured clients. Def. MSJ Resp. *6 (citing *Pekin Ins.Co. v. Home Ins. Co.*, 134 Ill. App. 3d 31, 33 (Ill. App. 1st Dist. 1985)). As such, Kinsey argues that PIIC should be liable for its damages resulting from the breach of contract.

PIIC believes that its acceptance of the Thome Settlement was reasonable. It argues that Bellin repeatedly represented that it would recover multiple millions of dollars in the litigation and that the eventual jury verdict of $1.39 million shows that liability was likely to exceed $1 million (even though the judge later reduced the verdict to $750,000 plus costs). Dkt. 37 at *4 [hereinafter Def. MSJ Reply]. However, Kinsey has introduced evidence showing that Bellin's costs to install the desired software after the relationship with Kinsey broke down were $577,920, a number reasonably close to the eventual expectation damages verdict of $750,000. Dkt. 32 ¶ 1. And although Bellin sought millions

in consequential damages, Kinsey's contract with Bellin explicitly disclaimed consequential damages, which led the judge in the Wisconsin Case to throw out the jury assessment of $640,000 in consequential damages. *See* dkt. 32, ex. D. Additionally, the "analysis" from Mr. Thome's lawyer that PIIC allegedly relied on in accepting Bellin's settlement offer is just a short and conclusory sentence. Dkt. 27-1. While these facts do not compel a conclusion that PIIC acted in bad faith, they certainly do not foreclose the possibility. A reasonable jury could find that PIIC "acted in a vexatious, unreasonable, or outrageous manner towards" Kinsey and thus acted in bad faith. *Pekin Ins. Co.*, 134 Ill. App. 3d at 34.

With respect to equitable estoppel, Kinsey alleges that, even though the judgment was not covered under the policy, PIIC is estopped from asserting a defense of noncoverage because (a) PIIC allegedly told Kinsey that all of Bellin's charges would be covered under the policy; and (b) PIIC controlled Kinsey's defense throughout the entire proceeding and never issued a reservation of rights letter. Def. MSJ Resp. *14–15; *see* dkt. 32 ¶¶ 9–10. Under Illinois law, "where a complaint against an insured alleges facts within or potentially within the coverage of the insurance policy, and when the insurer takes the position that the policy does not cover the complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage." *Standard Mut. Ins. Co. v. Lay*, 2013 IL 114617, ¶ 19. If the insurer fails to do either and if the insured is thereby prejudiced, then the insurer "will be estopped from later raising policy defenses to coverage." *Id.* In this specific legal context, "the word 'prejudice' is a term of art with a limited meaning": whether the insurer "took control of [the client's] litigation defense away from [the client]." *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1013 (7th Cir. 2019). Here, the record shows that PIIC had control of Kinsey's defense throughout the duration of the Wisconsin case.

PIIC's only reply is that equitable estoppel should not come into the Court's consideration at all for this motion because (PIIC claims) Kinsey did not make an equitable estoppel argument in its

complaint and because Kinsey has not introduced evidence sufficient to establish equitable estoppel. Def. MSJ Reply *2. It is true that Kinsey's complaint does not use the term "equitable estoppel." *See* dkt. 1-2. Kinsey also sought to amend its complaint to include that term, and the court denied that motion because the motions for summary judgment were already well underway. Dkt. 39, 42. However, the fact that Kinsey did not use the term "equitable estoppel" in its complaint does not doom its argument here. Federal Rule of Civil Procedure 8(a) requires only that a plaintiff make a "short and plain statement of the claim." It does not require a plaintiff to "identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir. 1992); *see also Hatmaker v. Memorial Medical Center,* 619 F.3d 741, 743 (7th Cir. 2010) ("plaintiffs in federal courts are not required to plead legal theories"). The operative question here is whether the complaint contains allegations sufficient to support the legal theory. Here, the complaint alleges that "PIIC defended Kinsey & Kinsey, Brad Kinsey, and Brian Thome in the Bellin suit without asserting any potential coverage defenses or otherwise reserving any rights to deny coverage under the policy. PIIC considered all counts in the suit to be covered, including the breach of contract count[.]" Dkt. 1-2 ¶ 9; *see also* ¶¶ 16, 20–22. These allegations suffice to establish an equitable estoppel argument, even though Kinsey did not use that term. And although Kinsey has not introduced copious evidence of PIIC's supposed assurances of coverage, it has produced a sworn declaration from Mr. Kinsey stating that PIIC told Kinsey that all charges would be covered. *See* dkt. 32, ex. A ¶¶ 6–9. That's not much, but it is enough to create a *prima facie* case and to create a dispute as to a material fact for summary judgment purposes.

In sum, the Wisconsin Judgment unquestionably was not covered by the policy. However, a reasonable jury could still look at these facts and decide, on the basis of Kinsey's bad faith argument, its equitable estoppel argument, or both, that Kinsey was injured by PIIC's breach of contract. Accordingly, the Court denies PIIC's motion for summary judgment with respect to injury.

## CONCLUSION

The Court denies PIIC's motion for judgment on the pleadings [28]. The Court grants in part and denies in part both motions for summary judgment [22, 25]. Specifically, the Court grants Kinsey's motion as to the question of breach in Count I of the complaint; and the Court grants PIIC's motion with respect to Count II of the complaint. Both motions for summary judgment are denied in all other respects.

**IT IS SO ORDERED.**

Date: 5/26/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge